# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UTAH TRAILWAYS CHARTER BUS
COMPANY LLC,
    2175 S. 3140
    West Valley City, UT 84119

MAVERICK KIRKLAND II LLC,
    12530 NE 144th St
    Kirkland, WA 98034

WENDOVER NUGGET OPERATOR LLC,
    101 W. Wendover Blvd.
    West Wendover, NV 89883

NG WASHINGTON III LLC,
    21917 Highway 99
    Mountlake Terrace, WA 98043

MAVERICK LAKEWOOD LLC,
    9811 S. Tacoma Way
    Lakewood, WA 98499

MAVERICK KIRKLAND LLC,
    12526 NE 144th St
    Kirkland, WA 98034

MVFTWO SERIES THREE,
    6555 S. Jones Blvd., Suite 100
    Las Vegas, NV 89118

RED GARTER OPERATOR LLC,
    1225 W. Wendover Blvd.
    West Wendover, NV 89883

JOHNNY Z CASINO OPERATOR LLC,
    132 Lawrence Street
    Central City, CO 80427

GOLD COUNTRY OPERATOR LLC,
    2050 Idaho St.
    Elko, NV 89801

Case No. 1:24-cv-01659

MVFTWO,
      8707 S. Priest Dr., Suite A108
      Tempe, AZ 85284

TROPICALSMOOTHIEAZ2,
      2815 W. Peoria Ave., Suite 107
      Phoenix, AZ 85029

TROPICALSMOOTHIEAZ3,
      1640 East Camelback Rd., Suite 150
      Phoenix, AZ 86015

VERITASFAYTHE INC.,
      10260 W. Charleston Blvd., Suite 103
      Las Vegas, NV 89135

VERITASFAYTHESEVEN LLC,
      10650 Southern Highland Pkwy
      Suite 100
      Las Vegas, NV 89141

             *Plaintiffs*,

v.

UNITED STATES SMALL
BUSINESS ADMINISTRATION;
      409 3rd St. SW
      Washington, DC 20416

ISABELLA CASILLAS GUZMAN,
in her official capacity as Administrator of the
U.S. Small Business Administration;
      409 3rd St. SW
      Washington, DC 20416

JANET YELLEN,
in her official capacity as United States
Secretary of Treasury;
      1500 Pennsylvania Avenue, NW
      Washington, DC 20220

UNITED STATES OF AMERICA,
      950 Pennsylvania Ave., NW
      Washington, DC 20530

             *Defendants*.

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiffs Utah Trailways Charter Bus Company LLC, Maverick Kirkland II LLC, WENDOVER NUGGET OPERATOR LLC, NG Washington III LLC, Maverick Lakewood LLC, Maverick Kirkland LLC, MVFTWO SERIES THREE, Red Garter Operator LLC, Johnny Z Casino Operator LLC, Gold Country Operator LLC, MVFTWO, TROPICALSMOOTHIEAZ2, TROPICALSMOOTHIEAZ3, VERITASFAYTHE INC., and VERITASFAYTHESEVEN LLC (collectively, "Plaintiffs"), hereby state and allege as follows:

1.      Plaintiffs are restaurants, small casinos, and other businesses that received Paycheck Protection Program ("PPP") loans pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020).

2.      Enacted during the height of the COVID-19 pandemic, Congress passed the PPP to help keep small businesses afloat—and keep Americans employed—by providing billions of dollars of loans to qualified small businesses.  To maximize the impact of this program, Congress in the CARES Act eased the SBA's traditional rules regarding who qualified for these "small business" loans.  *See* 15 U.S.C. § 636(a)(36)(2)(D).

3.      To further incentivize businesses to keep as many Americans as possible employed during the crisis, Congress authorized forgiveness of PPP loans so long as borrowers spent the loan proceeds on qualifying expenses—primarily payroll expenses.  *See* 15 U.S.C. § 636m(b)-(d).

4.      On May 4, 2020, Defendant the U.S. Small Business Administration ("SBA") published Interim Final Rule ("IFR") 7 in the Federal Register.  85 Fed. Reg. 26324-26 (May 4, 2020).

5.      Plaintiffs applied for their PPP loans prior to the enactment of IFR 7 on May 4, 2020.

6.    IFR 7 imposes additional limitations on loan forgiveness qualifications, providing that a "single corporate group" that received combined PPP loans in excess of $20 million is not eligible for forgiveness of any loans exceeding the cap.  *Id.* at 26,325.  IFR 7 further provided that entities are considered part of a "single corporate group" if they shared a "common parent."  *Id.*

7.    Mr. Eric Persson, an individual, directly or indirectly owns all Plaintiffs, as well as other entities that also received PPP loans.  Purporting to rely on IFR 7, the SBA first denied Plaintiffs' PPP loan forgiveness applications in late 2021 and early 2022 on multiple grounds, including that, due to Mr. Persson's common ownership of Plaintiffs and other entities, Plaintiffs were part of a "single corporate group," with a "common parent" that received more than $20 million in PPP loans.

8.    When Plaintiffs timely appealed those decisions in early 2022, the SBA began a song and dance to avoid judicial review of its decisions that would play out over the next two years.  Following Plaintiffs' first administrative appeals to the SBA Office of Hearings and Appeals ("OHA"), the SBA ultimately withdrew its forgiveness denial decisions in the spring of 2022, purporting to reconsider them.

9.    On August 22, 2022, however, the SBA issued revised denial decisions, proffering a slightly different interpretation of IFR 7, but reaching the same conclusion for all Plaintiffs: the Plaintiffs were part of a "single corporate group" that received more than $20 million in PPP loans because Mr. Persson constituted a "common parent."  Plaintiffs again timely appealed the forgiveness denials on September 21, 2022—only for the SBA to again withdraw the denials and moot the appeals.  Accordingly, the OHA dismissed Plaintiffs' second round appeals on November 17, 2022.

10.     Again the SBA purported to reconsider the denials.  And again the SBA issued a new round of denials on August 30, 2023—with yet another, slightly different, interpretation of IFR 7—denying forgiveness because of Plaintiffs' common ownership.  *See* Ex. 1, Final Loan Forgiveness Denials.  Plaintiffs again timely appealed on September 28, 2023.

11.     This (third) time the SBA finally proved willing to litigate the appeal to conclusion, and following the consolidation of Plaintiffs' appeals and subsequent briefing, the OHA issued a final decision (the "OHA Decision") on May 6, 2024, as to all Plaintiffs, affirming the SBA's third round of denials.  *See* Ex. 2, OHA Decision.  The OHA Decision became final on June 5, 2024. *See* 13 C.F.R. § 134.1211.

12.     The OHA Decision and the SBA's underlying denials are deeply flawed.  The OHA agreed (erroneously) that the term "common parent" in IFR 7 could include individual owners, not just corporate entities, ignoring the ordinary plain meaning of the regulation and the business context, where "parent" refers to a *corporate* parent.

13.     Mr. Persson, an individual, cannot be the parent of a corporate entity.  Not only is the SBA's interpretation of this unambiguous regulation contrary to law—and thus entitled to no deference—but the administrative record also demonstrates that the SBA's interpretation of the single corporate group rule shifted frequently over the course of this litigation.  Ultimately, the record contains no explanation for the SBA's decision to interpret "common parent" to include individuals.  Such gamesmanship is the definition of arbitrary and capricious conduct.

14.     The SBA—and the OHA—also failed to recognize the other problem with applying IFR 7 to Plaintiffs' loans: this action constitutes a retroactive application of the rule in violation of multiple SBA regulations and the agency's statutory authority.

15.     The SBA promulgated IFR 7 on May 4, 2020; all Plaintiffs applied for their PPP loans prior to that date.

16.     It is well-understood that retroactivity is disfavored in the law.  Moreover, this application is contrary to the rule itself: IFR 7 specifically states that it has an effective date of May 4, 2020 and that it does not have "retroactive effect." 85 Fed. Reg. at 26326.

17.     Moreover, multiple SBA regulations make clear that the requirements in place *at the time that* a PPP borrower *applied for its loan* determine eligibility for loan forgiveness, not requirements *later* imposed on loan qualification.  *See* 86 Fed. Reg. 8283, 8288 (Feb. 5, 2021); 85 Fed. Reg. 38304, 38306 (June 26, 2020); 85 Fed. Reg. 33004, 33005 (June 1, 2020).

18.     Finally, the OHA declined to consider Plaintiffs' claim that IFR 7's $20 million cap on loan amounts for single corporate groups was *ultra vires* because it contradicts the maximum *per-business* loan amount (up to $10 million) set by Congress under the CARES Act.  *See* 15 U.S.C. § 636(a)(36)(E).

19.     The OHA concluded it did not have the authority rule on this issue because it only has jurisdiction to determine whether the SBA's regulations have been appropriately applied to the facts of a case.

20.     In short, the SBA's denial of Plaintiffs' loan forgiveness applications—and the OHA's affirmance of that decision—is contrary to law, arbitrary and capricious, and in excess of the SBA's statutory authority.

21.     For these reasons and as explained below, the OHA Decision must be reversed, and this Court should issue an injunction enjoining the SBA from seeking to collect loan repayment.

## NATURE OF THE ACTION

22.     This is an action under the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*, for judicial review of the SBA's denial of the Plaintiffs' PPP loan forgiveness applications, and the OHA's subsequent affirmance of those denials in its Decision in the Plaintiffs' consolidated appeals.  This Court also has authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

## PARTIES

23.     Plaintiff Utah Trailways Charter Bus Company LLC is a Utah limited liability company with its principal place of business at 2175 S. 3140 West Valley City, UT 84119. Utah Trailways is in the business of providing chartered transportation buses.

24.     Plaintiff Maverick Kirkland II LLC is a Nevada limited liability company with its principal place of business as 12530 NE 144th Street, Kirkland, WA 98034.  Maverick Kirkland II is in the business of gaming and hospitality.

25.     Plaintiff Maverick Kirkland LLC is a Nevada limited liability company with its principal place of business at 12526 NE 144th Street, Kirkland, WA 98034.  Maverick Kirkland is in the business of gaming and hospitality.

26.     Plaintiff Maverick Lakewood LLC is a Nevada limited liability company with its principal place of business at 9811 South Tacoma Way, Lakewood, WA 98499.  Maverick Lakewood is in the business of gaming and hospitality.

27.     Plaintiff NG Washington III LLC is a Washington limited liability company with its principal place of business at 21917 Highway 99, Mountlake Terrace, WA 98043.  NG Washington III is in the business of gaming and hospitality.

28.     Plaintiff WENDOVER NUGGET OPERATOR LLC is a Nevada limited liability company with its principal place of business at 101 W. Wendover Boulevard, West Wendover,

NV 89883.  WENDOVER NUGGET OPERATOR is in the business of operating a casino, hotel, and food and beverage outlets.

29.     Plaintiff Johnny Z Casino Operator LLC is a Nevada limited liability company with its principal place of business at 132 Lawrence Street, Central City, CO 80427.  Johnny Z Casino Operator is in the business of operating a casino and food and beverage outlets.

30.     Plaintiff Red Garter Operator LLC is a Nevada limited liability company with its principal place of business at 1225 W. Wendover Boulevard, West Wendover, NV 89883. Red Garter Operator is in the business of operating a casino, hotel, and food and beverage outlets.

31.     Plaintiff Gold Country Operator LLC is a Nevada limited liability company with its principal place of business at 2050 Idaho Street, Elko, NV 89801.  Gold Country Operator is in the business of operating a casino, hotel, and food and beverage outlets.

32.     Plaintiff MVFTWO SERIES THREE is a Nevada limited liability company with its principal place of business at 6555 S. Jones Boulevard, Suite 100, Las Vegas, NV, 89118. MVFTWO SERIES THREE is in the business of operating a restaurant—specifically a Tropical Smoothie Cafe.

33.     Plaintiff MVFTWO is a Nevada limited liability company with its principal place of business at 8707 S. Priest Drive, Suite A108, Tempe, AZ 85284.  MVFTWO is in the business of operating a restaurant—specifically a Tropical Smoothie Cafe.

34.     Plaintiff TROPICALSMOOTHIEAZ2 is a Nevada limited liability company with its principal place of business at 2815 W. Peoria Avenue, Suite 107, Phoenix, AZ 85029. TROPICALSMOOTHIEAZ2 is in the business of operating a restaurant—specifically a Tropical Smoothie Cafe.

35.    Plaintiff TROPICALSMOOTHIEAZ3 is a Nevada limited liability company with its principal place of business at 1640 East Camelback Road, Suite 150, Phoenix, AZ 86015. TROPICALSMOOTHIEAZ3 is in the business of operating a restaurant—specifically a Tropical Smoothie Cafe.

36.    Plaintiff VERITASFAYTHE INC., is a Nevada corporation with its principal place of business at 10260 W. Charleston Boulevard, Suite 103, Las Vegas, NV, 89135. VERITASFAYTHE INC. is in the business of operating a restaurant—specifically a Tropical Smoothie Cafe.

37.    Plaintiff VERITASFAYTHESEVEN LLC, is a Nevada limited liability company with its principal place of business at 10650 Southern Highland Parkway, Suite 100, Las Vegas, NV, 89141. VERITASFAYTHESEVEN is in the business of operating a restaurant—specifically a Tropical Smoothie Cafe.

38.    Defendant SBA is an independent federal agency created and authorized pursuant to 15 U. S.C. § 633 *et seq*. Under the CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), the SBA administers the PPP.

39.    Defendant Isabella Casillas Guzman is the Administrator of the SBA and is named as a defendant only in her official capacity. Because she is the officer with final authority for administering the PPP within the SBA, Administrator Guzman is a proper defendant for causes of action brought under the APA. *See* 5 U.S.C. § 702.

40.    Defendant Janet Yellen is the Secretary of the United States Department of Treasury and is named as defendant only in her official capacity. Because she is the officer with final authority on all matters relating to the Department of Treasury consulting with the SBA for

the implementation of the PPP, Secretary Yellen is a proper defendant for causes of action brought under the APA. *Id.*

41.    Defendant United States of America is a proper defendant in APA cases. *Id.*

## JURISDICTION AND VENUE

42.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331, because this civil action arises under the APA, 5 U.S.C. § 701 *et seq*., the CARES Act, and SBA regulations.  This Court has the authority to grant declaratory and injunctive relief under the APA, 5 U.S.C. §§ 701-706, and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

43.    Plaintiffs have exhausted their administrative remedies before the SBA and the OHA and are entitled to judicial review of the OHA Decision.  *See* 5 U.S.C. § 704; 13 C.F.R. § 134.1201(d) ("An appeal to OHA is an administrative remedy that must be exhausted before judicial review of a final SBA loan review decision may be sought in a Federal district court.").

44.    The SBA's review and denial of the Plaintiff's appeal through the OHA became final on June 5, 2024, 30 days after service of the OHA Decision. *See* 5 U.S.C. § 704; § 134.1211(g) ("Appeal to Federal district court. Final decisions may be appealed to the appropriate Federal district court only.").

45.    Venue is proper in the United States District Court for the District of Columbia under 28 U.S.C. § 1391(e)(1), where the Defendants are primarily located and a substantial part of the actions at issue arose.

## STATUTORY BACKGROUND

46.    The CARES Act specifically amended "Section 7(a) of the Small Business Act (15 U.S.C. 636(a))," to create a new class of 7(a) loans, i.e., PPP loans, with their own specific rules and requirements. CARES Act § 1102(a).

47.    For PPP loans, the CARES Act streamlined the requirements of the "regular 7(a) loan program," including for example, relieving SBA lenders from having to comply with the SBA regulations at 13 CFR § 120.150 and to "allow lenders to rely on certifications of the borrower in order to determine eligibility of the borrower and use of loan proceeds and to rely on specified documents provided by the borrower to determine qualifying loan amount and eligibility for loan forgiveness."  85 Fed. Reg. 20811, 20812 (Apr. 15, 2020).

48.    The CARES Act expanded the types of borrowers eligible for 7(a) loans. Traditional 7(a) loans are only available to for-profit borrowers that qualify as small under the specific size standard for the industry in which the borrower conducts business.  *See* 13 C.F.R. § 120.100; 13 C.F.R. § 121.201.  For instance, to qualify as small as a limited-service restaurant for a traditional 7(a) loan, a borrower must have less than $13.5 million in annual average receipts. *See* 13 C.F.R. § 121.201 (size standard at North American Industrial Classification System ("NAICS") code 722513, Limited-Service Restaurants).

49.    However, the CARES Act amended the Small Business Act (15 U.S.C. § 636) to add a new subsection for PPP loans that would "increase[] eligibility for certain small businesses and organizations."  For instance, the CARES Act directed the SBA to offer PPP loans to "any business concern, nonprofit organization, veterans organization, or Tribal business concern . . . if [the borrower] employs not more than" 500 employees—regardless of what size standard typically applied for a particular industry.  *Id.* § 636(a)(36)(2)(D).

50.    Through the CARES Act, Congress added 15 U.S.C. § 636(a)(36)(E), which expressly provides for a "maximum loan amount" for each business that applies and is eligible for a PPP loan. This section uses a formula to set the maximum amount that could be received based

on historic payroll costs, and in no circumstance could that amount exceed $10 million.  *Id.* § 636(a)(36)(E).

51.     The CARES Act added other provisions related to eligibility for PPP loans.

52.     Specifically, the CARES Act addressed the applicability of the SBA's affiliation regulations to PPP loans.  *See id.* § 636(a)(36)(D)(iv).

53.     The SBA uses affiliation regulations to determine whether entities should be considered on a consolidated basis when making size status determinations under the SBA size standards.  *See, e.g.,* 13 C.F.R. § 121.101 (identifying size standards as the method by which the SBA determines whether an entity is small and thus eligible for certain government programs); 13 C.F.R. § 121.301(a) (interpreting the definition of small business concern to "require, in certain circumstances, the inclusion of other entities ('Affiliates') owned by the applicant or an owner of the applicant in determining the size of the applicant..").  These affiliation rules address several factors to determine whether entities are "affiliated" for these purposes, including ownership, control, and future options to own (such as convertible securities).  *See* 13 C.F.R. § 121.301(f). The SBA generally considers the totality of the circumstances when assessing affiliation, and can find affiliation exists even for minority ownership interests.  *See id.* § 121.103(a) (providing for general principles of affiliation, including that "negative control" rights may be sufficient to find affiliation).

54.     The SBA's affiliation regulations are some of the most aggressive affiliation standards in use by the federal government—more aggressive than those used by the Securities and Exchange Commission and the Internal Revenue Service. In other words, two entities considered separate and independent for federal tax and securities purposes could nevertheless be considered "affiliated" by the SBA.

55.     Recognizing that the SBA's affiliation regulations could dramatically restrict the availability and practicality of PPP loans for many types of businesses across the country, Congress established clear limits to the use of the SBA's affiliation regulations in the CARES Act. Specifically, Congress waived the SBA's affiliation rules for specific types of entities such as hotels, restaurants, and franchisees, meaning that there would be no restrictions to receiving PPP loans based on those companies' relationships to other companies or individuals. *See* 15 U.S.C. 636(a)(36)(D)(iv).

56.     Congress's intent is obvious from the text of the law, which stated in a section titled "waiver of affiliation rules" that "the provisions applicable to affiliations under section 121.103 of title 13, Code of Federal Regulations, or any successor regulation, are waived with respect to eligibility" for certain types of businesses. *Id.*  In other words, Congress was aware that certain businesses (including multiple restaurants with the same owner) could be considered grouped together due to certain ownership structures and thereby disqualified for PPP loans, and Congress directly eliminated this SBA-created limitation for certain business types in order to avoid this result.

57.     The CARES Act did not address nor mention any restrictions regarding PPP loans with respect to corporate groups—indeed, the waiver of affiliation rules in the statute suggests the opposite, that Congress did not intend receipt of PPP loans to be conditioned upon additional limitations set forth by the SBA.

58.     The CARES Act did not address or mention the applicability of any other SBA regulations, including the SBA regulations related to 7(a) program loan eligibility. *See e.g.*, 13 C.F.R. § 120.110(b).

59.    In order for the Treasury and the SBA to properly implement PPP Loan program as defined by the CARES Act, the SBA was tasked with promulgating new regulations on an emergency basis.  *See* CARES Act § 1114. However, a separate section of the CARES Act reserved for the Department of the Treasury the ability to issue regulations and guidance for "lenders and loans" and directed that any such regulations "to the maximum extent practicable" be consistent with the provisions of the PPP program, including specifically "Subparagraph (E), pertaining to the maximum loan amount." *Id.* § 1109(d)(2)(B)(ii).

## FACTUAL BACKGROUND

**A.    Plaintiffs' Loans**

60.    Most Plaintiffs are restaurants and small casinos.

61.    Mr. Persson is an individual—not a corporation—who exercises direct or indirect ownership over each of the plaintiffs.

62.    In response to COVID-19 and as part of the CARES Act, Congress specifically created an exemption to SBA's affiliation rules for certain PPP borrowers, including hotels and restaurants.  *See* 15 U.S.C. § 636(a)(36)(D)(iv)(I) and (II).

63.    Each Plaintiff was eligible to receive PPP loans, either because it was a hotel or restaurant that qualified for Congress' waiver of affiliation rules, or because it qualified for the alternative size standard set forth by the SBA.[1]

64.    Each Plaintiff applied for a PPP loan from the SBA and the SBA approved the loans.  Details pertaining to the loans and application dates are set forth in the table below.

---

[1] Under the alternative size standard, eligible PPP borrowers must have had (1) a maximum tangible net worth not exceeding $15 million, and (2) an average net income not exceeding $5 million after Federal income taxes (excluding any carry-over losses) for the two full fiscal years before the date of the loan application.  15 U.S.C. § 632(a)(5).

| Plaintiff | Date of PPP Loan Application | Loan Amount |
|---|---|---|
| Utah Trailways Charter Bus Company LLC | April 27, 2020 | $100,405 |
| Maverick Kirkland II LLC | April 27, 2020 | $1,536,415 |
| WENDOVER NUGGET OPERATOR LLC | April 27, 2020 | $1,545,851 |
| NG Washington III LLC | April 27, 2020 | $1,183,708 |
| Maverick Lakewood LLC | April 27, 2020 | $1,042,142 |
| Maverick Kirkland LLC | April 27, 2020 | $685,829 |
| MVFTWO SERIES THREE | April 30, 2020 | $34,952 |
| Red Garter Operator LLC | April 27, 2020 | $566,972 |
| Johnny Z Casino Operator LLC | April 27, 2020 | $443,205 |
| Gold Country Operator LLC | April 27, 2020 | $426,718 |
| MVFTWO | May 1, 2020 | $41,100 |
| TROPICALSMOOTHIEAZ2 | May 1, 2020 | $35,992 |
| TROPICALSMOOTHIEAZ3 | May 3, 2020 | $22,764 |
| VERITASFAYTHE INC | May 3, 2020 | $44,507 |
| VERITASFAYTHESEVEN LLC | April 30, 2020 | $30,420 |

65.    Each of the Plaintiffs applied for their respective PPP loans prior to May 4, 2020.

66.    On May 4, 2020, the SBA published IFR 7 in the Federal Register, limiting businesses that are part of a **single corporate group** from receiving PPP loans exceeding $20 million in the aggregate. *See* 85 Fed. Reg. at 26325.[2]

---

[2] The SBA released the text of IFR 7 online on April 30, 2020.

67.    IFR 7 expressly states that a single corporate group refers to business that are "majority owned, directly or indirectly, by a common parent." *Id.*

68.    IFR 7 had an immediate Effective Date of May 4, 2020 and "ha[d] no preemptive or retroactive effect." *Id.* at 26326.

69.    The Plaintiffs do not belong to a single corporate group under the definition of corporate groups set forth by the SBA in IFR 7.  Some Plaintiffs belong to no corporate group because they are wholly owned by an individual, while the remaining Plaintiffs belong to different corporate groups rather than a single corporate group.  *See* Ex. 3, Organizational Chart.

70.    No corporate group to which any of the Plaintiffs belong received more than $20 million in PPP loans, as documented by the following information and tables (plaintiffs are denoted by asterisk and bolded font).

71.    The first corporate group, which includes four Plaintiffs, received a combined amount of $9,210,333 in PPP loans.

| Corporate Group Members | PPP Loan Amount |
|---|---|
| Maverick Tukwila | $1,678,203 |
| Maverick Yakima | $1,195,481 |
| **Maverick Kirkland*** | $685,829 |
| 15743 Ambaum | $901,213 |
| **Maverick Lakewood LLC*** | $1,042,142 |
| **Maverick Kirkland II LLC*** | $1,536,415 |
| The Royal Club | $2,070,645 |
| **Utah Trailways Charter Bus Company, LLC∗** | $100,405 |
| **Total** | **$9,210,333** |

72.    The second corporate group, which includes one Plaintiff, received a combined amount of $10,299,024 in PPP loans.

| Corporate Group Members | PPP Loan Amount |
|---|---|
| **NG Washingon III LLC*** | $1,183,708 |
| NG Washington LLC | $3,628,123 |
| NG Washington II LLC | $5,487,193 |
| **Total** | **$10,299,024** |

73.    The third corporate group consists of two Plaintiffs that received a combined amount of $2,112,823 in PPP loans.

---

∗ Plaintiffs

| Corporate Group Members | PPP Loan Amount |
|---|---|
| **WENDOVER NUGGET OPERATOR LLC*** | $1,545,851 |
| **Red Garter Operator*** | $566,972 |
| **Total** | **$2,112,823** |

74.     The fourth corporate group, which includes one Plaintiff, received a combined amount of $2,174,326 in PPP loans.

| Corporate Group Members | PPP Loan Amount |
|---|---|
| **Gold Country Operator*** | $426,718 |
| Red Lion Operator | $1,747,608 |
| **Total** | **$2,174,326** |

75.     The fifth corporate group, which includes one Plaintiff, received a combined amount of $3,676,598 in PPP loans.

| Corporate Group Members | PPP Loan Amount |
|---|---|
| Grand Z Casino Operator | $1,972,728 |
| Z Casino Black Hawk Operator | $1,260,665 |
| **Johnny Z Casino Operator LLC*** | $443,205 |
| **Total** | **$3,676,598** |

76.     The remaining Plaintiffs are not part of any "corporate group," nor do they have a "common parent" because they have no corporate or institutional ownership.  Rather, they are owned directly by an individual person.  The amount of PPP loans awarded to each such Plaintiff is provided in the table below.

| **Entities Not Part of a Corporate Group** | **PPP Loan Amount** |
|---|---|
| TROPICALSMOOTHIEAZ3 | $22,764 |
| VERITASFAYTHESEVEN LLC | $30,420 |
| MVFTWO SERIES THREE | $34,952 |
| TROPICALSMOOTHIEAZ2 | $35,992 |
| MVFTWO | $41,100 |
| VERITASFAYTHE INC. | $44,507 |

77. The SBA knows that Mr. Persson is an individual, and that Plaintiffs are spread across several discrete corporate groups due to this individual ownership. The Plaintiffs' ownership structure predated IFR 7 and the SBA's single corporate group rule.

78. On the following dates, the Plaintiffs applied for forgiveness of their PPP loans in accordance with the rules provided by the SBA:

| **Plaintiff** | **PPP Forgiveness Application Date** |
|---|---|
| Utah Trailways Charter Bus Company LLC | February 19, 2021 |
| Maverick Kirkland II LLC | February 22, 2021 |
| WENDOVER NUGGET OPERATOR LLC | February 22, 2021 |
| NG Washington III LLC | March 5, 2021 |
| Maverick Lakewood LLC | March 5, 2021 |
| Maverick Kirkland LLC | March 5, 2021 |
| MVFTWO SERIES THREE | April 22, 2021 |
| Red Garter Operator LLC | February 23, 2021 |
| Johnny Z Casino Operator LLC | April 1, 2021 |

| Plaintiff | PPP Forgiveness Application Date |
| --- | --- |
| Gold Country Operator LLC | March 5, 2021 |
| MVFTWO | April 22, 2021 |
| TROPICALSMOOTHIEAZ2 | June 30, 2021 |
| TROPICALSMOOTHIEAZ3 | June 30, 2021 |
| VERITASFAYTHE INC | April 22, 2021 |
| VERITASFAYTHESEVEN LLC | October 14, 2020 |

79.     Plaintiffs used their respective PPP loans for forgiveness-eligible expenses, including payroll expenses.  Because of the PPP loans they received, Plaintiffs were able to continue employing greater numbers of employees during the COVID-19 pandemic than otherwise would have been economically feasible—particularly considering the nature of the businesses (restaurants and casinos) and the drop in economic activity at such establishments during the COVID-19 pandemic.

**B.    Procedural History**

80.     Plaintiffs have waited many years for the SBA to reach a final decision on loan forgiveness.  The cycle of forgiveness denials, appeals, and withdrawal of successive denial stretched out into a years-long process.  For many of the Plaintiffs, the SBA reached two prior decisions on loan forgiveness only to withdraw those decisions following Plaintiffs' appeals, keeping the Plaintiffs stuck in procedural limbo, unable to seek judicial review of the SBA's actions.

81.     Plaintiffs waited for significant lengths of time between these actions.  Plaintiffs first began receiving notifications of denials between January and March of 2022, after which they timely appealed.  However, in most cases, Plaintiffs were made to wait months after filing their

appeal to learn that SBA had withdrawn its denial.  For instance, MVFTWO SERIES THREE appealed its denial on January 14, 2022, but the SBA did not withdraw the denial until May 9, 2022—nearly four months after the appeal.  Other Plaintiffs suffered similar delays only to have the SBA withdraw all of its decisions related to the Plaintiffs.

82.    Plaintiffs also undertook significant effort to appeal these decisions, only to have SBA withdraw and have Plaintiffs continue waiting for a decision wherein millions of dollars hang in the balance.  By the SBA's actions, the Plaintiffs expended significant resources to prepare for and file appeals only to have the SBA withdraw the appeals and try again months or years later.

### 1.    *First Round of Forgiveness Denials, Appeals, and Withdrawals*

83.    Initially in January through March 2022, the SBA denied Plaintiffs' applications for PPP loan forgiveness, and Plaintiffs timely filed the requisite appeals.

84.    Subsequently, rather than defend its decisions before the OHA, the SBA withdrew every decision issued to Plaintiffs.  As such, Plaintiffs were required to wait while the SBA "reconsidered" its decisions.  Ultimately, most Plaintiffs were made to wait for not one, but *two* more denials.

85.    For the first round of denials, the SBA gave several bases for denial across the different loan applications.  The original bases for the first round of denials were a conglomerate of numerous and sometimes inconsistent themes.

86.    One significant theme was that several of the entities employed too many people, and therefore did not meet the small business size standard under the SBA 7(a) loan program.  The SBA stated that these entities failed both the employee-based size standard and the SBA alternative size standard test, completely ignoring the exemptions for restaurants in the CARES Act and the fact that many of the entities in fact met the alternative size standard test.

87.    The second significant theme was that all of the entities were in the family of corporations owned by Mr. Persson.  The decisions by the SBA asserted that, because that "family" had received beyond $20 million in aggregate PPP loan forgiveness, it would violate IFR 7 to repay any further loans beyond that amount.  This conclusion ignores the fact that Mr. Persson is an individual, not a family or corporate parent.

88.    A third important theme in the denials was the SBA's failure to consistently categorize or prove whether Mr. Persson was an individual, estate, family, corporate parent, or group.  Some justifications, such as the denial justification for Plaintiff Gold Country Operator LLC, refer to Mr. Persson as an individual, while others refer to Mr. Persson as an individual or estate.  The denial justification for Plaintiff VERITASFAYTHESEVEN LLC refers to Mr. Persson as a "family."

89.    None of the justifications referred to Mr. Persson as a "common parent," which conflicts with the language in IFR 7 stating that a "common parent" is required in order to violate the $20 million cap on PPP loans. Additionally, the justifications vacillate between calling Mr. Persson an individual—which he is—and calling him a corporate group—which he is not.

90.    The decisions also focus on different aspects of Mr. Persson's ownership and affiliation issues.  Some denials say that Mr. Persson directly or indirectly owns over 50% of the entity, while others merely refer to him as a common owner.  Some rejections specify that Mr. Persson is affiliated with 38 loans, while others merely assert that the "corporate group" received loans in excess of the $20 million cap.  Some denials explain that the entities are affiliates because of the common, majority ownership of Mr. Persson, but others state that the entities are in a corporate group that surpassed the $20 million aggregate cap without explaining why.

91.    Ultimately, the SBA withdrew all of these loan denial decisions throughout April and May of 2022 and sought and received dismissal of the appeals from the OHA for lack of jurisdiction.  The SBA claimed it needed additional time to reevaluate the Plaintiffs' applications for forgiveness.

### 2.    Second Round of Forgiveness Denials, Appeals, and Withdrawals

92.    The SBA denied Plaintiffs' applications for loan forgiveness approximately three months later, in August 2022.

93.    The SBA issued these denials on the same date, August 22, 2022, and on a similar basis for all Plaintiffs.  The second round basis was that the entities were owned by Mr. Persson's "corporate group," which allegedly violated IFR 7 because the entities owned by Mr. Persson in total received more than the proscribed $20 million limit on PPP loans.  Specifically, each loan decision stated the following regarding the rationale for denying forgiveness:

> After a review of the documentation provided, the SBA concludes that the Borrower business which is part of a corporate group has received more than $20,000,000 of PPP loans in the aggregate. The applicant is part of a corporate group with Eric Persson as its common parent and the group exceeded the maximum $20,000,000 allowed via subject loan disbursement date after April 30, 2020.it is confirmed that Eric Persson is the indirect owner of those multiple entities; therefore, it is confirmed that Eric Persson is the majority owner and common parent of all entities via the direct or indirect ownership of all. Based on the language in IFR #7, there is only one Corporate Group consisting of Eric Persson due to his majority interest in each business. As a result, this Corporate Group exceeds $20,000,000 in aggregate PPP loans.

94.    Plaintiffs timely appealed this second round of denials by the SBA on September 21, 2022.

95.    Once again, rather than defend its denials, the SBA completely withdrew these decisions, and sought and received dismissal of the OHA appeals for lack of jurisdiction.

96.     The SBA stated that its decision to withdraw these decisions was because the SBA determined that it was necessary to complete a further review of the loans.

97.     The OHA dismissed as moot the second round of appeals on November 17, 2022.

### 3.     *Third Round of Forgiveness Denials*

98.     The SBA again denied Plaintiff's applications for loan forgiveness on August 30, 2023.[3] The SBA also issued denial justifications on that date.  *See* Ex. 1.

99.     The basis for the denial was that the entities were owned by Mr. Persson's "corporate group," allegedly violating IFR 7 because the entities owned by Persson in total received more than the proscribed $20 million limit on PPP loans.  Specifically:

> After a review of the documentation provided, the SBA concludes that the Borrower business which is part of a corporate group has received more than $20,000,000 of PPP loans in the aggregate. The applicant is part of a corporate group with Eric Persson as its common owner and the group exceeded the maximum $20,000,000 allowed via subject loan disbursement date after April 30, 2020. It is confirmed that Eric Persson is the majority indirect owner of those multiple entities; therefore, it is confirmed that Eric Persson is the majority owner of all entities via direct or indirect ownership as attested to on the borrower's organizational chart and 2483's. Based on the language in IFR #7, there is only one Corporate Group consisting of Eric Persson due to his majority ownership in each business. As a result, this Corporate Group exceeds $20,000,000 in aggregate PPP loans.  *See* Ex. 1.

100.    Plaintiffs appealed on September 28, 2023, except for VERITASFAYTHESEVEN LLC, which appealed on November 3, 2023 following the issuance of the SBA's denial on October 16, 2023.

101.    Instead of continuing this cycle of denials and withdrawals, the SBA chose to litigate this matter and permit Plaintiffs to seek judicial relief to which they are rightly entitled.

---

[3] The SBA did not deny VERITASFAYTHESEVEN LLC's forgiveness application until October 16, 2023, when Plaintiffs pointed out that they had not yet received a denial for that entity.

### 4.    *OHA Appeal Consolidation and Denial*

102.    On September 28, 2023, and also on November 3, 2023, Plaintiffs filed separate appeals from the SBA's denials of forgiveness of their respective PPP loans, requesting that the OHA reverse the SBA's decisions.

103.    All Plaintiffs raised similar arguments in their appeals as the basis for challenging the SBA's denial of their loan forgiveness.

104.    Plaintiffs' first argument was that the SBA erroneously applied the "single corporate group" limit to their PPP loans because an individual who exercises direct or indirect ownership over entities, as Mr. Persson does, cannot be a "common parent" of a "corporate group" under SBA regulations.  Plaintiffs argued that these terms are unambiguous and thus, IFR 7 did not require denial of loan forgiveness for entities otherwise entitled to PPP loan forgiveness.

105.    Plaintiffs' second argument was that the SBA cannot apply the "single corporate group" rule retroactively to change the conditions of the PPP loans since here, Plaintiffs applied for their respective PPP loans before IFR 7 became effective on May 4, 2020.  Plaintiffs argued that after IFR 7 was published, the SBA clarified that loan forgiveness applications would be based on the requirements applicable at the time the PPP loan application was submitted.

106.    Plaintiffs' third argument was that the SBA exceeded its statutory authority in promulgating the "single corporate group" rule because the SBA did not receive express authorization from Congress to create a maximum loan amount separate from the maximum amount set forth in the CARES Act.  Therefore, the "single corporate group" rule is unenforceable.

107.    On November 29, 2023, the OHA issued a Revised Notice and Order consolidating Plaintiffs' 15 appeals in the interest of judicial economy (the "Consolidated Appeal").

108.    The lead case in the Consolidated Appeal was Utah Trailways Charter Bus Company, LLC, Docket No. 1780087404.

109.    On May 6, 2024, the OHA denied the Consolidated Appeal (the "OHA Decision"). *See* Ex. 2.

110.    In the OHA Decision, the OHA judge rejected Plaintiffs' first argument, noting that the term "common parent" in IFR 7 must be interpreted within the broader context of the PPP to include individuals operating as sole proprietorships, as well as partnerships.  Therefore, IFR 7 is not limited to parent corporations and Mr. Persson's ownership over Plaintiffs renders all entities as part of a single corporate group.  *See* Ex. 2 at 16-21.

111.    The OHA judge then rejected Plaintiffs' second argument, writing that the terms and eligibility for receiving a PPP loan are distinct and separate from the terms and eligibility for receiving full forgiveness from that loan.  The OHA judge ruled that the "single corporate group" rule was not in fact applied retroactively because here, IFR 7 became effective prior to Plaintiffs submitting their loan forgiveness applications.  *Id.* at 13-16.

112.    With respect to Plaintiffs' third argument, the OHA judge declined to make any ruling, noting that an OHA judge's authority only goes so far as to determine whether the SBA's regulations and policies have been appropriately applied to the facts in the case, and does not permit him to decide the validity of an SBA regulation.  *Id.* at 11-13.

### C.    The SBA's Actions Were Arbitrary, Capricious, Contrary to Law, and In Excess of Statutory Right

113.    Pursuant to the APA, 5 U.S.C. §§ 701-706, a court reviewing a final agency action must "hold unlawful and set aside agency action, findings, and conclusions to be found to be ... (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).  Furthermore, a court must set aside agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  *Id.* § 706(2)(C).

114.    The agency's actions here meet these standards.  First, the SBA erroneously concluded that Plaintiffs were part of a single corporate group because it misapplied the plain language of IFR 7 in determining that Mr. Persson, an individual, constituted a "common parent" under the text of the rule.  Neither the plain text of IFR 7 nor anything in the administrative record supports the agency's interpretation that "common parent" can include individual ownership in addition to corporate ownership.

115.    Second, the SBA erred in applying IFR 7 retroactively, despite the plain language of the rule stating that it does not have retroactive effect.  All Plaintiffs applied for their PPP loans before IFR 7 was issued on May 4, 2020.  The SBA nevertheless applied the rule retroactively to determine that Plaintiffs constituted a "single corporate group" under Mr. Persson.

116.    Finally, IFR 7 and the single corporate group limitation exceed the SBA's statutory authority by imposing an additional cap on PPP loans available to businesses not intended by Congress.

117.    SBA's conduct in misapplying IFR 7 to deny Plaintiffs' loan forgiveness applications, and the affirmance of that denial in the OHA Decision, is arbitrary, capricious, contrary to law, and in excess of statutory right.

###### 1.    The SBA's Determination That Plaintiffs Form a Single Corporate Group Is Arbitrary, Capricious, and Contrary to Law

###### a.    The SBA's Interpretation of the Term "Common Parent" Is Erroneous

118.    The SBA premised its denial of loan forgiveness to all Plaintiffs based on the application of the "single corporate group" rule from IFR 7, purportedly on the basis of Mr. Persson's—an individual's—common ownership, not a *common parent*'s ownership, as IFR 7 requires.

119.    In so doing, the SBA ignored the plain text of IFR 7.  IFR 7 stresses that its limitations on the amount of PPP loans apply to a "**single** corporate group."  *See* 85 Fed. Reg. at 26325 (emphasis added).  In IFR 7, the SBA defined a "single corporate group" to include any business "if they are majority owned, directly or indirectly, by a **common parent**."  *Id.* (emphasis added).

120.    "Common parent" has an "ordinary, contemporary, common meaning" in the context of grouping businesses—a parent corporation—and that ordinary meaning governs interpretation of IFR 7.  Under bedrock principles of statutory interpretation, IFR 7 must be construed within the context of business enterprises.  Conversely, canons of construction will not sanction an interpretation that construes "common parent" as that term applies in an unrelated field, such as family law, where it would make sense to interpret "common parent" as an individual and not a corporation.

121.    Because the agency's regulation must be construed rationally in the relevant context, Plaintiffs are not part of a single corporate group because they do not have a single "common parent" as is clear from how the term is defined in analogous regulatory schemes.  *See, e.g.*, 26 U.S.C. § 1504(a)(1) (the common parent of an affiliated group must be a corporation); 26 C.F.R. § 1.1502-1 (defining "member" of a corporate group as "a corporation (including the common parent) that is included in the group"); 26 C.F.R. § 1.1471-5(i)(10) (only a corporation can be a common parent for FACTA withholding purposes); 48 C.F.R. § 4.901 (for purpose of Federal Acquisition Regulations, a common parent must be a corporate entity).

122.    The SBA could have chosen broader terms to define "single corporate group" for purposes of limiting the amount of PPP loans disbursed to particular entities.  For example, the SBA could have defined "single corporate group" as any business that is majority owned, directly

or indirectly, by a common controlling entity or individual. The SBA could also have simply replaced the term "parent" with "owner" to signify that the term included any type of entity including individuals.

123.    In the alternative, the SBA could have attempted to make use of some form of its affiliation rules if the SBA had wanted to include individuals within the meaning of "common parent" for purposes of the "single corporate group" limitation in IFR 7. For instance, the long-standing SBA affiliation rules for "set-aside" procurements have long made clear that they apply to both entities and individuals. *See* 13 C.F.R. § 121.103(a)(4) ("Affiliation may be found where an individual, concern, or entity exercises control indirectly through a third party."). In addition, the most recent revision of the affiliation rules for SBA loans makes clear its application to both entities and individuals by incorporating different subsections addressing how ownership by entities will be treated and how ownership by individuals will be considered. *See* 13 C.F.R. § 121.301(f)(1)(ii) and (iii); 88 Fed. Reg. 21074, 21086 (Apr. 10, 2023).

124.    However, IFR 7 never included an indication that it would apply to individuals. The SBA specifically chose the term "common parent" in IFR 7 to define the limits of the corporate group rule as opposed to a term that would have encompassed individuals. Because IFR 7 is unambiguous that "common parent" cannot be an "individual," the SBA is not entitled to deference in construing its own (*post hoc*) definition of "single corporate group."

125.    Moreover, the administrative record before the OHA did not include any reasoned explanation for why the SBA chose to treat individuals as corporate groups. It did not include any statement, position, guidance, or policy documents indicating why or how the SBA can interpret IFR 7 such that the term "corporate parent" can mean an individual. It appears the SBA did not undertake any reasoned analysis or explanation to support its denials.

126.    In short, the SBA's interpretation of the term "common parent" directly contradicts the text of the regulation.  For that reason alone, the SBA's loan forgiveness denials, premised as they are on the (erroneous) conclusion that Plaintiffs are part of a "single corporate group" due to Mr. Persson's individual ownership, are arbitrary, capricious, and contrary to law.

> b.    *The SBA Actually Relied on Irrelevant Rules in Determining Plaintiffs Constituted A Single Corporate Group*

127.    Even assuming, however, that the SBA's interpretation of IFR 7 were correct—or at least reasonable—in the abstract (which it is not), it does not appear from the administrative record before the OHA that the SBA actually relied on IFR 7's definition of "single corporate group" in making its decision to deny forgiveness.

128.    Instead, the administrative record before the OHA contained a reference to 31 C.F.R. § 148.2(c), a Treasury Department definition section on recordkeeping requirements for the Federal Deposit Insurance Corporation, *id.*, which has no connection to PPP loan forgiveness under the CARES Act, and which the SBA did not cite, reference, or otherwise allude to in IFR 7.

129.    Further, the SBA's second loan review decision, issued on August 22, 2022, referred to Mr. Persson as the "**common parent**" of a corporate group that has received more than $20,000,000 of PPP loans in the aggregate.  But, in its present, third denial—and after that second denial had been challenged—the SBA uses new verbiage referring only to an undefined and legally irrelevant "**common owner**."  This change in terminology is consistent across the latest denials (yet unexplained in the administrative record before the OHA), suggesting that the SBA decided to shift its approach across these loans based on a potentially new (and once again unexplained) agency interpretation of IFR 7.  The SBA cannot arbitrarily create and refer to entirely new definitions or terms; the agency is bound by the words of the governing regulation—words that the SBA itself chose to use in IFR 7.

130.    Most recently, in separate communications via two PPP lenders to other entities within the purported "corporate group" owned by Mr. Persson during the pendency of the Consolidated Appeal before the OHA, the SBA brazenly admitted that it is now attempting to enforce yet another definition of "common parent" for purposes of defining a "single corporate group." *See* Ex. 4, Email from B. Benson, Lexicon Bank (Mar. 14, 2024); Ex. 5, Email from SBA Submission Processor, U.S. Bank (Mar. 15, 2024).   Now, apparently, "[t]he SBA defines a Corporate Group as any single individual or multiple investors that invest more than once together and own more than 50% of entities ('commonly owned')."  Exs. 4, 5.  This new definition is conspicuously divorced from the text of IFR 7 and absent from the administrative record before the OHA.   Further, the agency's arbitrary redefinition is a clear overstep of its regulatory boundaries and a disturbing indication of the SBA's disregard for its own rules.

131.    The administrative record before the OHA also contained multiple references to the SBA's traditional affiliation rules—even though the CARES Act specifically waived the application of the SBA's typical affiliation rules for PPP borrowers including hotels, restaurants, and franchisees.  *See* 15 U.S.C. § 636(a)(36)(D)(iv)(I) and (II).  Indeed, Congress made explicit that it intended for businesses that qualified for the affiliation exceptions to be treated as individual businesses and not amalgamated with affiliated or related entities for purposes of determining PPP loan eligibility.  Many of the Plaintiffs received exemptions from the typical affiliation rules under this statutory requirement.

132.    Yet the administrative record before the OHA nevertheless contained references to the affiliation rules that seem to suggest the SBA used them as a proxy in interpreting "single corporate group" to deny Plaintiffs' loan forgiveness applications.  For example, the SBA stated "[a]s indicated by the majority ownership of Eric Persson, all members of this **affiliate** family are

part of a single corporate group **being affiliates of each other** under the common control of Mr. Persson." In fact, the document in the administrative record before the OHA that memorializes the SBA's decision that Mr. Persson is a "single corporate group" is called "Affiliate Narrative Worksheet."

133.    In other words, the administrative record before the OHA illustrated the SBA's shifting and unexplained approaches to applying the "single corporate group" rule—each of which are without support in the text of IFR 7 or the administrative record. There can be no question that the SBA's actions here were arbitrary and capricious, and that the agency's loan forgiveness denials were erroneous and must be reversed.

### 2.    The SBA's Retroactive Application of the Interim Final Rule is Arbitrary, Capricious, Contrary to Law, and In Excess of the SBA's Statutory Authority

134.    The SBA's retroactive application of IFR 7 to loan applications submitted before its effective date was contrary to the text of the rule, arbitrary and capricious, and in excess of the SBA's statutory authority.

135.    As illustrated in the chart in Paragraph 64, *supra*, Plaintiffs submitted their PPP loan applications between April 27, 2020, and May 3, 2020. At the time, there was no "single corporate group" rule in effect.

136.    The SBA enacted IFR 7 on May 4, 2020 and stated that it had an "immediate effective date." *See* 85 Fed. Reg. at 26324 ("This rule is effective May 4, 2020.").

137.    IFR 7 also expressly stated that it "ha[d] no preemptive or retroactive effect." *Id.* at 26,326.

138.    In addition to the text of IFR 7 itself, three separate SBA regulations promulgated *after* the agency issued IFR 7 make clear that the standards to apply in determining PPP forgiveness applications are those in effect at the time of the submission of the loan application.

*See* 86 Fed. Reg. 8283, 8288 (Feb. 5, 2021); 85 Fed. Reg. 38304, 38306 (June 26, 2020); 85 Fed. Reg. 33004, 33005 (June 1, 2020).

139.    For instance, in a rulemaking focused on PPP loan forgiveness requirements and loan review procedures, the SBA stated: "The Administrator has determined that to be an eligible recipient that is entitled to forgiveness under section 7A(b), the borrower must be an 'eligible recipient' under section 7(a)(36) and section 7(a)(37) of the Small Business Act and **rules and guidance available at the time of the borrower's loan application**."  86 Fed. Reg. 8283, 8295 (Feb. 5, 2021) (emphasis added).

140.    Moreover, this requirement to evaluate forgiveness based on the rules in place at the time of the borrower's loan application was not a misstatement by SBA—SBA repeatedly emphasized this standard.  Indeed, SBA set out the standard that the rules in existence at the time of loan application were controlling before it issued IFR 7 and then repeated that standard multiple times after promulgating IFR 7:

a.    "Borrowers and lenders may rely on the laws, rules, and guidance available **at the time of the relevant application**."  *See* Ex. 6, April 6, 2020 Paycheck Protection Program Loans, FAQ 17 (cited in 86 Fed. Reg. 8283, 8294 n.76 (Feb. 5, 2021)) (emphasis added).

b.    "If SBA determines in the course of its review that the borrower was ineligible for the PPP loan based on the provisions of the CARES Act, **SBA rules or guidance available at the time of the borrower's loan application**, or the terms of the borrower's PPP loan application (for example, because the borrower lacked an adequate basis for the certifications that it made in its PPP loan application), the loan will not be eligible for loan forgiveness."  85 Fed. Reg. 33004, 33005 (June 1, 2020) (emphasis added).

c.  "If SBA determines in the course of its review that the borrower was ineligible for the PPP loan based on the provisions of the CARES Act, **SBA rules or guidance available at the time of the borrower's loan application**, or the terms of the borrower's PPP loan application (for example, because the borrower lacked an adequate basis for the certifications that it made in its PPP loan application), the loan will not be eligible for loan forgiveness."  85 Fed. Reg. 38304, 38306 (June 26, 2020) (emphasis added).

d.  "If SBA determines in the course of its review that the borrower was ineligible for the PPP loan under the statute, **the SBA rules or guidance available at the time of the borrower's loan application**, or the terms of the borrower's PPP loan application (for example, because the borrower lacked an adequate basis for the certifications that it made in its PPP loan application), the loan will not be eligible for loan forgiveness." 86 Fed. Reg. 8283, 8288 (Feb. 5, 2021) (emphasis added).

e.  "The Administrator may review whether a borrower is eligible for the PPP loan based on the provisions of the CARES Act, the Economic Aid Act, the **rules and guidance available at the time of the borrower's PPP loan application**, and the terms of the borrower's loan application."  86 Fed. Reg. 8283, 8294 (Feb. 5, 2021) (emphasis added).

141.    Yet despite this weight of authority indicating that only the rules in effect at the time of a loan application govern the loan, the SBA retroactively applied the limitation on "single corporate group" loan disbursements, applying the limitation "to any loan that has not yet been fully disbursed as of April 30, 2020" without regard to when the borrower applied for the loan.  85 Fed. Reg. at 26325.  This conduct was in violation of the plain text of the rule, arbitrary, capricious, and contrary to law.

142.    Moreover, this action was in violation of the SBA's statutory authority.  Although the CARES Act granted the SBA the right to make rules governing the PPP loan program, *see* 15 U.S.C. § 636(a)(36)(B), Congress did not grant the SBA the right to issue and enforce *retroactive* rules.

143.    In short, the SBA had no authority under the CARES Act to retroactively change the rules of the PPP program, and its attempt to do so by applying IFR 7 to applications filed prior to its publication was unlawful.

144.    As a result, the SBA's denial of Plaintiffs' applications for loan forgiveness was erroneous because it relied upon retroactive application of IFR 7, notwithstanding the fact that the SBA lacked the power to apply IFR 7 to loan applications submitted *before* May 4, 2020.

### 3.    The SBA's Issuance of the Corporate Group Rule is Ultra Vires

145.    The SBA also exceeded its statutory authority in promulgating the "single corporate" group amount in IFR 7 in the first place.

146.    The agency claims that it promulgated the "single corporate group" $20 million limit "[t]o preserve the limited resources available to the PPP program."  *See* 85 Fed. Reg. 26325 (May 4, 2020).  However, Congress had already determined how PPP resources were to be preserved, setting its own maximum loan amount.  *See* CARES Act § 1102(a)(E), 134 Stat. 289 (Mar. 27, 2020), codified at 15 U.S.C. § 636(a)(36)(E).

147.    In other words, Congress in the CARES Act addressed the issue of how to preserve limited resources under the PPP, thereby limiting the agency's discretion to act on this issue. Congress did not state that the "maximum loan amount" under PPP could also be some other amount determined by the SBA through exercise of its rulemaking authority.

148.    Yet in IFR 7, the SBA suggested that it had implicit statutory authority to set a **different** maximum loan than that set by Congress based on its generic authority to promulgate rules.  *See* 85 Fed. Reg. at 26325 n.1 (citing 15 U.S.C. Chapter 14A) (emphasis added).

149.    This determination is erroneous and contrary to well-established principles of statutory interpretation.  The CARES Act established a clear regime for capping PPP loans to preserve resources.  Moreover, the CARES Act specifically *required* rules promulgated for the PPP to be consistent with the maximum loan amount.  *See* CARES Act § 1109(d)(2)(B). Furthermore, Congress required that PPP loan forgiveness requirements "to the maximum extent practicable, [be] consistent with the terms and conditions for loan forgiveness under" the CARES Act.  *Id.* § 1109(d)(2)(D).

150.    Congress' generic delegation—in a different statute decades before the CARES Act—to the agency to promulgate regulations as necessary was not *sub silentio* permission to alter the PPP statutory scheme.  Had Congress wanted to give the SBA authority to set a different cap on PPP loan amounts, it would have spoken clearly on that issue.

151.    The SBA's creation of a separate discrete maximum loan amount, without statutory authorization and in contradiction of the maximum amount already set under the CARES Act, was *ultra vires*.

## COUNT I

### VIOLATION OF ADMINISTRATIVE PROCEDURE ACT 5 U.S.C. § 706(2)(A): DEFENDANTS' INTERPRETATION OF IFR 7 IS ARBITRARY, CAPRICIOUS, AND CONTRARY TO LAW

152.    Plaintiffs re-allege and incorporate by reference each of the forgoing paragraphs as if set forth herein.

153.    Plaintiffs have exhausted their administrative remedies before the SBA and the OHA.  The OHA Decision is subject to judicial review as a final agency action under the APA.  *See* 5 U.S.C. § 704; 13 C.F.R. § 134.1201(d); *id.* § 1211(g).

154.    The OHA Decision, and the SBA's underlying loan forgiveness denials, were arbitrary, capricious, and contrary to law.  *See* 5 U.S.C. § 706(2)(A).

155.    The SBA's interpretation of IFR 7 to encompass a single individual, as affirmed in the OHA Decision, is contrary to the plain text of the rule, internally inconsistent, and arbitrary and capricious.  Nothing in the text of the rule indicates that a "common parent" can include an individual, as opposed to a *corporate* parent, as the business context dictates.

156.    Moreover, nothing in the administrative record explains or supports the agency's decision to interpret "common parent" to include an individual.  Rather, the agency's interpretation of this term has shifted with each denial of Plaintiffs' loan forgiveness applications, the epitome of arbitrary and capricious conduct.

157.    As a direct result of the unlawful actions of Defendants, Plaintiffs have been, and continue to be, deprived of the loan forgiveness to which they are entitled according to SBA rules and the CARES Act as amended.

## COUNT II

### VIOLATION OF ADMINISTRATIVE PROCEDURE ACT 5 U.S.C. § 706(2)(A): DEFENDANTS' RETROACTIVE APPLICATION OF IFR 7 IS ARBITRARY, CAPRICIOUS, AND CONTRARY TO LAW

158.    Plaintiffs re-allege and incorporate by reference each of the forgoing paragraphs as if set forth herein.

159.    Plaintiffs have exhausted their administrative remedies before the SBA and the OHA.  The OHA Decision is subject to judicial review as a final agency action under the APA.  *See* 5 U.S.C. § 704; 13 C.F.R. § 134.1201(d); *id.* § 1211(g).

160.    The OHA Decision, and the SBA's underlying loan forgiveness denials, were arbitrary, capricious, and contrary to law.  *See* 5 U.S.C. § 706(2)(A).

161.    Specifically, the SBA's retroactive application of IFR 7 to deny PPP loan forgiveness applications for loans that were applied for before the effective date of IFR 7 is arbitrary and capricious, an abuse of discretion, and not in accordance with law.  The text of IFR 7 specifically states that the rule is not intended to have retroactive effect.  Moreover, the retroactive application violates multiple SBA regulations specifically stating that loan forgiveness would be determined based on "rules or guidance available at the time of the borrower's loan application."  *See, e.g.,* 86 Fed. Reg. 8283, 8288; 85 Fed. Reg. 38304, 38306; 85 Fed. Reg. 33004, 33005.

162.    As a direct result of the unlawful actions of Defendants, Plaintiffs have been, and continue to be, deprived of the loan forgiveness to which they are entitled according to SBA rules and the CARES Act as amended.

## **COUNT III**

**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT 5 U.S.C. § 706(2)(C): DEFENDANTS' RETROACTIVE APPLICATION OF IFR 7 IS IN EXCESS OF DEFENDANTS' STATUTORY AUTHORITY**

163.    Plaintiffs re-allege and incorporate by reference each of the forgoing paragraphs as if set forth herein.

164.    Plaintiffs have exhausted their administrative remedies before the SBA and the OHA.  The OHA Decision is subject to judicial review as a final agency action under the APA.  *See* 5 U.S.C. § 704; 13 C.F.R. § 134.1201(d); *id.* § 1211(g).

165.    The OHA Decision, and the SBA's underlying loan forgiveness denials, were in excess of the SBA's statutory authority and short of statutory right.  *See* 5 U.S.C. § 706(2)(C).

166.    The SBA's retroactive application of IFR 7 to deny PPP loan forgiveness applications for loans that were applied for *before* the effective date of IFR 7 is in excess of the SBA's statutory authority and short of statutory right, as the SBA has no authority under the CARES Act to make rules for the PPP program retroactive to loans previously applied for and approved under earlier PPP regulations.

167.    As a direct result of the unlawful actions of Defendants, Plaintiffs have been, and continue to be, deprived of the loan forgiveness to which they are entitled according to SBA rules and the CARES Act as amended.

### COUNT IV

### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT 5 U.S.C. § 706(2)(C): IFR 7 WAS PROMULGATED IN EXCESS OF DEFENDANTS' STATUTORY AUTHORITY

168.    Plaintiffs re-allege and incorporate by reference each of the forgoing paragraphs as if set forth herein.

169.    Plaintiffs have exhausted their administrative remedies before the SBA and the OHA.  The OHA Decision is subject to judicial review as a final agency action under the APA. *See* 5 U.S.C. § 704; 13 C.F.R. § 134.1201(d); *id.* § 1211(g).

170.    The OHA Decision, and the SBA's underlying loan forgiveness denials, were in excess of the SBA's statutory authority and short of statutory right.  *See* 5 U.S.C. § 706(2)(C).

171.    The OHA Decision was also in violation of the APA because IFR 7 was promulgated in excess of the SBA's statutory authority.  *See* 5 U.S.C. § 706(2)(C).  The additional limit on loan amounts imposed by IFR 7 is *ultra vires* and inconsistent with the CARES Act, which already imposes a maximum loan amount, eliminating the agency's discretion in this area.  The OHA Decision's reliance on this *ultra vires* rule was therefore in error.

172.     Again, as a direct result of the unlawful actions of Defendants, Plaintiffs have been, and continue to be, deprived of the loan forgiveness to which they are entitled according to SBA rules.  This Court should hold that the OHA Decision and the underlying loan forgiveness denials were unlawful and should direct the SBA to grant forgiveness to Plaintiffs regarding their PPP loans.

## COUNT V

## INJUNCTIVE RELIEF

173.     Plaintiffs re-allege and incorporate by reference each of the forgoing paragraphs as if set forth herein.

174.     Plaintiffs have been deprived of the loan forgiveness to which they are entitled according to SBA rules and the CARES Act, which was intended to ease economic hardships caused by the unprecedented COVID-19 pandemic.  Plaintiffs will suffer significant and irreparable harm if they are required to begin repaying the loans at issue.

175.     Plaintiffs have no other adequate remedy at law, as it is unclear by what mechanism Plaintiffs would be able to recover damages from the government if they are forced to begin repaying their loans.

176.     The public interest will be served by proper enforcement of the CARES Act and SBA's PPP regulations.

177.     There is no prejudice to Defendants from requiring compliance with applicable statutes and regulations.

**WHEREFORE**, Plaintiffs respectfully request the Court enter a judgment in its favor and against Defendants, granting the following relief:

a.  With respect to Count I: (1) find that the SBA's decisions denying Plaintiffs' loan forgiveness applications, and the OHA's subsequent Decision, were arbitrary,

capricious and contrary to law; and (2) declare, under the Declaratory Judgment Act, that Defendants have violated the Administrative Procedure Act and that the Plaintiffs are entitled to loan forgiveness;

b.  With respect to Count II: (1) find that the SBA's decisions denying Plaintiffs' loan forgiveness applications, and the OHA's subsequent Decision, were arbitrary, capricious, and contrary to law; and (2) declare, under the Declaratory Judgment Act, that Defendants have violated the Administrative Procedure Act and that the Plaintiffs are entitled to loan forgiveness;

c.  With respect to Count III: (1) find that the SBA's decisions denying Plaintiffs' loan forgiveness applications, and the OHA's subsequent Decision, were in excess of the SBA's statutory authority; and (2) declare, under the Declaratory Judgment Act, that Defendants have violated the Administrative Procedure Act and that the Plaintiffs are entitled to loan forgiveness;

d.  With respect to Count IV: (1) find that the SBA's decisions denying Plaintiffs' loan forgiveness applications, and the OHA's subsequent Decision, were in excess of the SBA's statutory authority; and (2) declare, under the Declaratory Judgment Act, that Defendants have violated the Administrative Procedure Act and that the Plaintiffs are entitled to loan forgiveness;

e.  With respect to Count V: enter a judgment granting an injunction prohibiting Defendants from seeking repayment of Plaintiffs' SBA loans;

f.  Award Plaintiffs' reasonable attorneys' fees and costs; and

g.  Grant such other relief as this Court may deem just and proper.

Dated: June 6, 2024                         Respectfully submitted,

                                            /s/ *Kyle R. Jefcoat*
                                            Kyle R. Jefcoat (Bar No. 492380)
                                            Dean W. Baxtresser (Bar No. 1012089)
                                            Genevieve P. Hoffman (Bar No. 155092)
                                            **Latham & Watkins LLP**
                                            555 Eleventh Street, NW, Suite 1000
                                            Washington, DC 20004
                                            Tel: (202) 637-2200
                                            Fax: (202) 637-2201
                                            kyle.jefcoat@lw.com
                                            dean.baxtresser@lw.com
                                            genevieve.hoffman@lw.com

                                            *Attorneys for Plaintiffs*

## LIST OF EXHIBITS

| Exhibit 1 | SBA Final Denials of Forgiveness |
|-----------|----------------------------------|
| Exhibit 2 | OHA Consolidated Appeal Denial Decision |
| Exhibit 3 | Corporate Organization Chart |
| Exhibit 4 | Email from Lexicon Bank (Mar. 14, 2024) |
| Exhibit 5 | Email from U.S. Bank (Mar. 15, 2024) |
| Exhibit 6 | SBA FAQs |