# EXHIBIT 2

# United States Small Business Administration
# Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

Utah Trailways Charter Bus Company LLC,
and 15 other consolidated cases

       Appellants

Appealed from
SBA PPP Loan Number
1780087404, *et al.*

DECISION

Issued:  May 6, 2024

Docket No. PPP – 1780087404-CONS

## <u>APPEARANCES</u>

*For Appellant*
   Lathan & Watkins, LLP:

| | |
|---|---|
| Dean W. Baxtresser | dean.baxtresser@lw.com |
| Alexandra M. Gersdorf | allie.gersdorf@lw.com |
| Kyle R. Jefcoat | <u>kyle.jefcoat@lw.com</u> |
| Nathan A. Sandals | nathan.sandals@lw.com |

    Kyle R. Jefcoat was designated as lead counsel for serving of documents, notices and all communications.

*For the Small Business Administration*

| | |
|---|---|
| Anthony Davis | pppappealsogc@sba.gov |
| Tanner Hatch | pppappealsogc@sba.gov |
| Caitlin Kelly | pppappealsogc@sba.gov |
| Lane Siems | <u>pppappealsogc@sba.gov</u> |

    Caitlin Kelly was designated as lead counsel for serving of documents, notices and all communications.

## <u>INTRODUCTORY NOTE REGARDING</u><br><u>CONSOLIDATION OF CASES</u>

On or about September 28, 2023, and also November 3, 2023, Appellants listed below, and each of them, filed separate Appeals from denials of forgiveness of their respective PPP loans.  Each appeal was timely filed.

Docket No. PPP – 1780087404-CONS

|   | Appellant Name | SBA PPP Loan Number and Docket Number PPP- | Contact Counsel for Appellant | Contact Counsel for SBA |
|---|---|---|---|---|
| 1 | Utah Trailways Charter Bus Company LLC | 1780087404 | Dean Baxtresser | Lane Siems |
| 2 | Maverick Kirkland II LLC | 4428507208 | Kyle Jefcoat | Anthony Davis |
| 3 | WENDOVER NUGGET OPERATOR LLC | 4468727209 | Dean Baxtresser | Lane Siems |
| 4 | NG Washington III LLC | 5037217201 | Kyle Jefcoat | Tanner Hatch |
| 5 | Maverick Lakewood LLC | 5418357201 | Kyle Jefcoat | Caitlin Kelly |
| 6 | Maverick Kirkland LLC | 5562707204 | Kyle Jefcoat | Lane Siems |
| 7 | MVFTWO SERIES THREE | 5637097304 | Dean Baxtresser | Tanner Hatch |
| 8 | Red Garter Operator LLC | 6523817204 | Kyle Jefcoat | Anthony Davis |
| 9 | Johnny Z Casino Operator LLC | 6547757204 | Kyle Jefcoat | Caitlin Kelly |
| 10 | Gold Country Operator LLC | 6796977201 | Kyle Jefcoat | Anthony Davis |
| 11 | MVFTWO | 7277087709 | Dean Baxtresser | Tanner Hatch |
| 12 | TROPICALSMOOTHIEAZ2 | 8195517708 | Dean Baxtresser | Caitlin Kelly |
| 13 | TROPICALSMOOTHIEAZ3 | 8265277704 | Dean Baxtresser | Tanner Hatch |
| 14 | VERITASFAYTHE INC | 8343317710 | Dean Baxtresser | Lane Siems |
| 15 | VERITASFAYTHESEVEN LLC | 8426507300 | Kyle Jefcoat | Caitlin Kelly |

In a Revised Notice and Order issued on November 29, 2023, I found that:

1. substantially similar Final SBA Loan Review Decisions were issued denying loan forgiveness regarding each of the above-identified PPP loans,
2. each of the above identified appeals was timely filed,
3. all of the Appellants are represented by the same counsel, specifically Latham & Watkins, LLP,
4. all of the Appeals have been assigned to the same (undersigned) Administrative Law Judge (ALJ),
5. all of the Appeals deal with the same issues; namely, SBA's finding that all of the Appellants are part of a corporate group with Eric Persson as its common owner, and that the corporate group exceeded the maximum $20,000,000.00 loan amount allowed, and
6. that in the interests of judicial economy, these appeals should be consolidated.

Thereupon, on November 29, 2023, the above-listed PPP appeals were Consolidated, with Utah Trailways Charter Bus Company, LLC, docket no. 1780087404, treated as the "lead case" for the purposes of scheduling, filing and deadlines for filings, such that a filing or other action in that lead case would apply for all of the cases.

I note that a previously consolidated appeal regarding 15743 AMBAUM LLC (PPP loan number 5548647203) was dismissed on December 5, 2023.

Unless otherwise indicated from the wording and context herein, for ease in drafting and reading this Decision, hereafter the case will be described as regarding only one case, and one "Appellant," being Utah Trailways Charter Bus Company, LLC, docket no. 1780087404.  Thus, the language "Appellants, and each of them" will not be used, but a reference to "Appellant" will

nevertheless apply to each and all Appellants. Further, the use herein of a dollar amount or date applicable to Utah Trailways Charter Bus Company, LLC may not be specifically applicable to another of the consolidated appeals. Nevertheless, the given dollar amounts and dates are intended to be representative of the amounts and dates, and sequencing of events, for each Appellant and applied so as to make a meaningful, consistent, and uniform decision applicable to each Appellant, despite differences in the specific amounts and dates used in this Decision. Thus, this Decision is intended to and does apply with the same force and effect to each of the above-listed cases and Appellants as applied to the specific facts of each respective appeal.

The parties were directed that a single Administrative Record agreed upon by the parties would be the procedure expected to be adopted, unless objected to by any party. The Agreed Administrative Record (hereafter "AAR") shall include non-privileged, relevant documents that SBA considered in making its final loan review decision or that were before SBA at the time of the final loan review decision. The administrative record need not, however, contain all documents pertaining to the appellant. 13 CFR §134.1207(b). Thus, the Agreed Administrative Record was to contain actual documents from one case (*e.g.*, Utah Trailways) that are representative of all the cases such that substantially duplicate documents, in terms of the issues involved on appeal, need not be included multiple times. Documents that are relevant to the issues on appeal and unique to a specific case and not the others, if any, shall be so identified.

The Office of Hearings and Appeals (OHA) conducts Paycheck Protection Program (PPP) appeals under the authority of Title 13, Part 134, Subpart L of the Code of Federal Regulations (CFR)[1, 2].

Per regulations, including 13 CFR §134.1211(c)(1), a request for reconsideration may be made only within 10 calendar days after service of a Judge's decision. A request for reconsideration may be filed on the OHA Case Portal. It is the borrower's responsibility to review the rules and procedures.

## <u>DECISION</u>

The U.S. Small Business Administration (SBA) Office of Capital Access issued a Paycheck Protection Program (PPP) Final SBA Loan Review Decision that found Appellant ineligible for the full PPP loan forgiveness of $100,405.00. Appellant filed the instant appeal from that Final SBA Loan Review Decision, dated August 30, 2023.

Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that SBA's Office of Hearings and Appeals (OHA) reverse it, and find Appellant is eligible for the full PPP loan forgiveness requested. After carefully considering the evidence and arguments presented in the Agreed Administrative Record and the evidence and arguments in the record on appeal, for the reasons discussed herein I find that Appellant's appeal does not show the SBA's decision was based on a clear error of fact or law, and therefore the appeal is denied, and the Final SBA Loan Review Decision is affirmed.

---

[1] The final version of Subpart L became effective on September 14, 2021 (*Federal Register,* Vol. 86, No. 1177, Pgs. 51589-51597, Sept. 16, 2021, *effective September 14, 2021).*

[2] The most recent version of 13 CFR Part 134 is available from the National Archives at https://www.ecfr.gov/current/title-13/chapter-I/part-134?toc=1.

## I.  CARES Act, PPP Loans and OHA Jurisdiction

In March 2020, in response to the COVID-19 pandemic and the resulting economic upheaval, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, 134 Stat. 281 (2020).  Section 1102 of the Act established the Paycheck Protection Program (the Program, or PPP), which was aimed at helping businesses meet payroll costs and pay operating expenses in order to keep people employed through the economic downturn.  Id. § 1102, 134 Stat. at 286 (codified at 15 USC § 636(a)(36)).  Congress first authorized $349 billion in loans.  CARES Act § 1102(b)(1).  One month later, Congress increased this figure to $659 billion.  Paycheck Protection and Health Care Enhancement Act, Pub. L. No. 116-139, § 101(a)(1), 134 Stat. 620 (2020).

The Small Business Act had been enacted on July 7, 1953.  Various regulations had been implemented in relation to that Act, including 13 CFR §120.110, which became effective in 1996.  (61 Fed. Reg. 3223, 3235, 3239.)  Congress placed the Paycheck Protection Program under Section 7(a) of the Small Business Act, making the Small Business Administration (SBA) the agency entrusted to administer the Program.  See CARES Act § 1102(a) (adding Paragraph (36) to 15 U.S.C. § 636(a)).  Section 7(a) loans are the SBA's main program for helping small businesses.  In Re Gateway Radiology Consultants, P.A.  983 F.3d 1239, 1248 (2020) (11th Cir.).  Congress gave the SBA rulemaking power directly related to the PPP, specifying that SBA "shall issue regulations to carry out this title" and SBA implemented and issued several Interim Final Rules (IFRs) under the Program.  CARES Act, § 1114, 134 Stat. at 312 (codified at 15 U.S.C. § 9012)

I note that Congress provided that the PPP was to be administered by the SBA and the PPP legislation was placed within the provisions of pre-existing law regarding SBA loans.  This is an indication that the PPP statutory provisions were to be interpreted as fitting into the pre-existing law, and the regulations supporting that statutory framework.  This is further supported in that Congress gave the SBA only 30 days to issue regulations to implement the PPP loan forgiveness legislation, which time appears insufficient for traditional rulemaking including any public comment period.  See CARES Act §1106 (k).  Additionally, any regulations the SBA issued regarding eligibility for PPP loans were to be, "to the maximum extent practicable," consistent with traditional loans made under section 7(a) of the Small Business Act, with regard to borrower eligibility, maximum loan amount, allowable uses of loaned funds, and other aspects.  See CARES Act §1109 (d).  Given these statutory provisions and how the PPP was intentionally placed within the pre-existing law, I conclude that there is a rational and substantial basis to apply the provisions of pre-existing law and regulations (such as 13 CFR §120.110) to the PPP eligibility determinations, and that their application by the SBA is not arbitrary or capricious.  In addition to the placement of the PPP into the pre-existing regulatory structure, the applicability of these regulations was published on the SBA's website on April 2, 2020, and additionally in the Federal Register on April 15, 2020, as the first Interim Final Rule for the program.  See Interim final rule, "Business Loan Program Temporary Changes; Paycheck Protection Program," RIN 3245-AH34, p 7, and see 85 Fed. Reg. 36717 and 85 Fed. Reg. 20811.  These publications gave public notice that the provisions and limitations of 13 CFR §120.110 applied to PPP loans.  Therefore, for all these reasons, I find the provisions of 13 CFR §120.110 are applicable to the present loan (and its forgiveness).

*PPP Loan Eligibility*

The PPP is directed at small businesses and its principal function is to provide potentially forgivable loans to them. See 15 USC § 636(a)(36)(D)(I). The PPP loans are made under the same terms, conditions, and processes as other SBA loans, although the scope of allowable borrowers was expanded for PPP loans to generally include sole proprietorships, independent contractors, non-profit organizations, and other specified businesses, as long as they were operating "small" business of not more than 500 employees. 15 USC § 636(a)(36)(B) and 15 USC § 636(a)(36)(D).

However, not all such businesses are eligible for PPP loans. The statute also provides that "the [SBA] Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection." 15 USC § 636(a)(36)(B). Ineligible types of businesses are identified in 13 CFR §120.110. These ineligible businesses include, for example, financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors; life insurance companies; pyramid sale distribution plans; businesses deriving more than one-third of gross annual revenue from legal gambling activities; businesses engaged in any illegal activity; businesses with an Associate who is incarcerated, on probation, on parole, or has been indicted for a felony or a crime of moral turpitude; businesses that have previously defaulted on a Federal loan or Federally assisted financing; businesses owned or controlled by an applicant or any of its Associates which previously owned, operated, or controlled a business which defaulted on a Federal loan. 13 CFR §120.110.

Additionally, there are limitations that preclude some individuals from receiving PPP loans or being a participant in receiving a PPP loan. Thus, for example, persons "debarred" under the SBA or Government-wide debarment regulations may not conduct business with SBA. 13 CFR §103.2(b). Individuals are precluded if they recently were convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with a public transaction or contract, violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification, or destruction of records, making false statements, or receiving stolen property. Executive Order 12549, 13 CFR part 145. Also, if a borrower or 20% or more owner of a borrower is presently involved in a bankruptcy proceeding, the borrower is ineligible for a PPP loan. SBA Form 2483-SD or SBA Form 2483-SD-C; FAQ issued April 9, 2021.

Moreover, the PPP loans were given only if, in light of the COVID-19 pandemic, the borrowed funds were necessary to support the ongoing operations of the eligible recipient; and that the funds would be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments. 15 USC §636(a)(36)(F) and (G). PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States, and, further, salary expenditures were capped at the equivalent of no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II). If the borrower was not eligible for a PPP loan, but nevertheless received such a loan, then the loan is not subject to forgiveness. See 85 Fed. Reg. 33010, 33012- 33013.

*PPP Loan Forgiveness*

Importantly, "if the loaned funds are used for specified expenses," the borrowing business could receive forgiveness of its loan. See 15 USC § 636m. Application for, and receipt of, a PPP loan

is a wholly separate process from application for, and receipt of, forgiveness of that loan.  Loan forgiveness is provided for under a different, but related, statutory provision.  See 15 USC §636(a)(36)(K) which makes applicable the provisions of 15 USC §636m (that is applicable to non-PPP loans), with limitations specified for PPP loans.  The PPP loan recipient can receive loan forgiveness if it uses the funds to cover payroll and certain other expenses like mortgage interest or rent payments and utility expenses.  Generally, the amount of the loan that is forgiven is the amount used to pay those costs.  But the bulk of the funds, at least 60 percent, must be spent on payroll.  15 USC §636(a)(37)(J)(iv)

The list of allowable uses for PPP loan funds [15 USC § 636(a)(36)(F)] is not the same as the list of uses eligible for loan forgiveness [15 USC § 636(a)(36)(J)].  Significantly, the statutory list of allowable uses of loan funds is different from the list of uses that qualify for loan forgiveness; thus, all forgivable uses are allowable, but not all allowable uses are forgivable.  For example, payments related to health care benefits and interest on debt obligations are allowable uses of loan funds, but the portion of the loan used for those payments will not be forgiven.  See 15 USC §636(a)(36)(F)(i)(I) - (VII); and 15 USC §636(a)(36)(J)(iii)(I)-(VIII).  See Gateway Radiology Consultants, cited above, at 1247.  Only an eligible recipient of a PPP loan may receive loan forgiveness.  15 USC §636(a)(36)(A)(ii) and (iv); 15 USC §636m(a)(1) and (10))

The PPP was a loan program that included an assessment of the borrower and a decision regarding whether the borrower met the loan eligibility requirements and was not precluded by ineligibility rules.  The independent forgiveness aspect of the program also involved a decisional process, initially requiring the borrower to apply for loan forgiveness (indicating that forgiveness was not automatic), which forgiveness could be for less that the full loan amount.  The forgiveness process also calls for an assessment of the borrower's eligibility for the loan, since an ineligible loan may not be forgiven.  Also, an assessment was to be made regarding how the loaned funds were used, in order to determine the proper forgiveness amount, if any.  Indeed, the PPP was not a grant program whereby the government guaranteed funds handed to those who asked for it, but instead it was clearly a loan program whereby loans could be denied, and even if granted, then forgiveness of the loan could nevertheless be denied in whole or in part.  The SBA's regulations were adopted or, if pre-existing, were made applicable so as to guide the deliberative processes in issuing and in forgiving the PPP loans.

*PPP Loan Forgiveness Denial and Appeal*

The PPP loan forgiveness process includes an application for forgiveness for a specified dollar amount, which may be less than the full loan proceeds.  The forgiveness application is made to the lender, which issues a decision on the amount of forgiveness, if any.  15 USC §636m (e), (f) and (g).  Thereafter, SBA reviews the lender's decision and if there is a denial of forgiveness, then SBA issues a Final SBA Loan Review Decision.

There are four possible bases for appeal of a denial of PPP loan forgiveness.  The Final SBA Loan Review Decision will show forgiveness denial based because the borrower:

1.  Was ineligible for a PPP loan.

2.  Was ineligible for the PPP loan amount received or used the PPP loan proceeds for unauthorized uses.

3. Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to SBA, or

4. Is ineligible for PPP loan forgiveness in any amount when the lender has issued a full denial decision to SBA.  13 CFR §134.1201(b).

I note that these denial bases may be stated on different terms.  Thus, forgiveness denial may be because.

1. the borrower was ineligible to have obtained the loan (and thus because of some characteristic of the borrower, all of the loan funds were received inappropriately, and no forgiveness is warranted), or

2. the borrower was ineligible for the full amount received or that some or all loan proceeds were used for a non-forgivable purpose (and thus because of some characteristic of the amount or use of the funds received, some or all of the funds received do not warrant forgiveness), or

3. the lender found that forgiveness was warranted (in full or in part), but the SBA found that the borrower was ineligible for some, or all, of the amount allowed by the lender (and thus the amount of allowable forgiveness is smaller than the lender determined), or

4. that the lender found that forgiveness was not warranted in any amount, and the SBA also found that the borrower was ineligible for forgiveness in any amount (and thus no amount of forgiveness is allowed).

The SBA's Office of Hearings and Appeals (OHA) conducts PPP appeals under the authority of 13 CFR Part 134 Subpart L.  However, for OHA and its Judges to have jurisdiction, SBA must have issued a Final SBA Loan Review Decision regarding the loan at issue, as the appeal is taken from the decision contained in that Final SBA Loan Review Decision.  13 CFR §134.1201(a-c).  The SBA's Office of Capital Access issues a Final SBA Loan Review Decision on whole or partial denials of forgiveness of PPP loans.  To file and manage an appeal of a Final SBA Loan Review Decision with OHA, appellants must use the OHA Case Portal (the Portal) at https://appeals.sba.gov.  13 CFR §134.1202(a).

*Authority of an SBA OHA Judge*

The undersigned is a former federal government Administrative Law Judge (ALJ) who retired from that civil service position.  After retirement I was hired as a "rehired annuitant" employed by the SBA as an Administrative Judge.  An Administrative Judge has authority no greater than that of an Administrative Law Judge.  The authority of such a judge is limited.

An Administrative Law Judge (ALJ) has no constitutionally based judicial power, see Ramspeck v. Federal Trial Examiners Conference, 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them.  See e.g., 20 U.S.C. § 1234(c) (statute establishing the Office of Administrative Law Judges within the Department of Education provides that ALJs "shall be officers or employees of the Department").  As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules.  See Nash v. Bowen, 869 F.2d 675, 680 (2d Cir.), cert, denied, 493 U.S. 813 (1989); Mullen v. Bowen, 800 F.2d 535, 540-41 n.5 (6th Cir. 1986); Brennan v. Department of Health and Human Services, 787 F.2d 1559 (Fed. Cir.), cert. denied, 479 U.S. 985 (1986); Goodman v. Svahn, 614 F. Supp. 726, 728 (D.D.C. 1985); Association of Administrative Law Judges, Inc. v. Heckler, 594 F. Supp. 1132, 1141 (D.D.C. 1984); cf

- 7 -

D'Amico v. Schweiker, 698 F.2d 903, 906 (7th Cir. 1983). Accord 34 CFR §81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

Thus, I have no authority to question or decide the validity or constitutionality of an SBA regulation or policy. Rather, my role is to determine whether the adopted regulations and policies have been appropriately applied to the facts of the case. I also note that neither initial nor final decisions rendered by the SBA's Office of Hearings and Appeals (OHA) under this subpart are precedential. 13 CFR §134.1212.

## II.  Loan History

Appellant, a Limited Liability Company, completed an application for a First Draw PPP loan on April 27, 2020. (AAR 890 ff.) A promissory note was signed on May 5, 2020, with Utah Trailways Charter Bus Company LLC as the borrower. (AAR 23 ff.) On May 5, 2020, a lender financial institution disbursed an SBA guaranteed PPP loan to Appellant in the amount of $100,405.00. (AAR 4, 890.)

On January 11, 2021, Appellant filed for forgiveness of $100,405.00, being the full loan amount received. (AAR 894.) The Lender requested forgiveness (to Appellant, with payment to the lender per the SBA's guarantee) in the amount of $100,405.00. (AAR 17.)

The SBA approved Appellant's application for forgiveness in the amount of $0.00. (AAR 17.) A Final SBA Loan Review Decision was issued by the SBA's Office of Capital Access dated August 30, 2023. (AAR 17.) The Final SBA Loan Review Decision was reportedly received by Appellant on August 30, 2023. (Portal About Appeal.)

Appellant has appealed SBA's forgiveness decision, contending instead that the full loan amount of $100,405.00 should be forgiven, and alleging that SBA has made a clear error of fact or law.

## III.  Timeliness and Standing

In this case the Final SBA Loan Review Decision was issued on August 30, 2023 (to the lender) and on the Portal was certified by Appellant as having been first received by Appellant on August 30, 2023. The appeal was filed by initiation on the Portal on September 28, 2023, which is within the 30-day time requirement. The appeal is timely.

In this case the borrower is Utah Trailways Charter Bus Company LLC. (Promissory Note, AAR 23.) The Final SBA Loan Review Decision was issued regarding the above-cited PPP loan and Utah Trailways Charter Bus Company LLC. (AAR 17.) The Appellant is identified on the Portal as Utah Trailways Charter Bus Company LLC. (Portal About Appeal.)

Appellant appears to be a limited liability company (LLC). (Portal About Appeal, AAR 890.) The appeal petition on the Portal was signed by Dean Baxtresser. (Portal Appellant Point of Contact.) The record shows that Dean Baxtresser is an attorney, with the firm of Latham & Watkins LLP. (Portal Docket, Utah Trailways Appeal, filed September 28, 2023.) Further, the record shows that Dean Baxtresser is an attorney representing Appellant. (Portal Docket, Utah Trailways Appeal, filed Septmber 28, 2023.)

Based on this, I find that Dean Baxtresser is a proper representative for the Appellant entity.

- 8 -

Additionally, I find that there is sufficient evidence of record to establish proper standing to pursue the appeal.

## IV.  Burden of Proof and Standard of Review

All PPP appeals will be decided solely on a review of the administrative record, the appeal petition, any response, any reply or supplemental pleading, and filings related to objection to the administrative record.  13 CFR §134.1209.  SBA may respond to an appeal as determined in its discretion, but SBA is not required to respond.  If SBA elects not to respond, such election shall not be interpreted as an admission or waiver of any allegation of law or fact.  13 CFR §134.1208(a).  Appellant has the burden of proving all elements of the appeal.  Specifically, Appellant must prove that the Final SBA Loan Review Decision is based upon a clear error of fact or law.  13 CFR §134.1210.

The Administrative Record was filed on March 11, 2024.  Appellant made objections to the Administrative Record, but in regard to the objections, all requests were denied in an Order issued March 20, 2024.  SBA did file a response to the appeal petition, received April 5, 2024.  The record closed on April 5, 2024.  However, on March 25, 2024, an Order was issued granting the parties time after the close of the record to file additional argument and points and authorities in support of their positions, with the last submission timely filed on April 29, 2024

## V.  Facts of this Case and the Final SBA Loan Review Decision

SBA wholly denied Appellant's Forgiveness Application because the SBA concluded that each Borrower business is part of a corporate group that has received more than $20,000,000 of PPP loans in the aggregate.  This exceeds the allowable loan limit, rendering Appellants ineligible for the PPP loans.  Because the Appellants were ineligible for a PPP loan, the loan is not eligible for any forgiveness.  85 Fed. Reg. 33010, 33012- 33013.

In particular, SBA found that each loan recipient is part of one Corporate Group of business concerns with common ownership by Eric Persson, and the total of all affiliated loans exceeded the $20 million corporate maximum limit found in Interim Final Rule 7 by loan disbursement on April 30, 2020.  SBA found that there are 38 separate PPP loans with which Eric Persson is affiliated, for a total of $32,905,957.79, thus exceeding the limit by $12,905,957.79.[3]  (See AAR 10-11.)

On May 4, 2020, the SBA published the single corporate group limitation (SCGL) regulation at issue in this appeal in the seventh Interim Final Rule (IFR 7) which reads in pertinent part:

1. Can a single corporate group receive unlimited PPP loans?
    No.  To preserve the limited resources available to the PPP program, and in light of the previous lapse of PPP appropriations and the high demand for PPP loans, businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate.[1]  For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent.

---

[3] There are other indications in the record that these dollar amounts were related to 40 business concerns in which Mr. Persson has a majority ownership interest.  I find these differences are not material.  Rather, the point is that there were a number of such businesses that received PPP loans, and the issue is whether any of them exceeded the single corporate group limitation contained in IFR 7.

This limitation shall be immediately effective with respect to any loan that has not yet been fully disbursed as of April 30, 2020.[2]

It is the responsibility of an applicant for a PPP loan to notify the lender if the applicant has applied for or received PPP loans in excess of the amount permitted by this interim final rule . . ..  Failure by the applicant to do so will be regarded as a use of PPP funds for unauthorized purposes, and the loan will not be eligible for forgiveness.  . . .  Businesses are subject to this limitation even if the businesses are eligible for the waiver-of-affiliation provision under the CARES Act or are otherwise not considered to be affiliates under SBA's affiliation rules.

> Fn 1.  The Administrator has authority to issue ''such rules and regulations as [the Administrator] deems necessary to carry out the authority vested in him by or pursuant to'' 15 U.S.C. Chapter 14A, including authorities established under section 1102 of the CARES Act.  Section 1102 provides that the Administrator ''may'' guarantee loans under the terms and conditions set forth in section 7(a) of the Small Business Act, and those conditions specify a ''maximum''—but not a minimum—loan amount.  See 15 U.S.C. 636(a)(36)(B), (E); see also CARES Act section 1106(k) (authorizing SBA to issue regulations to govern loan forgiveness).  To preserve finite appropriations for PPP loans and ensure broad access for eligible borrowers, the Administrator, in consultation with the Secretary, has determined that an aggregate limitation on loans to a single corporate group is necessary and appropriate.

> Fn 2.  For loans that have been partially disbursed, this limitation applies to any additional disbursement that would cause the total PPP loans to a single corporate group to exceed $20 million.

85 Fed. Reg. 26324, 26325 (Effective May 4, 2020; footnotes included as in the original.)

On August 30, 2023, SBA issued its Final SBA Loan Review Decision that found Appellant was wholly ineligible for the PPP loan.  The stated basis for the forgiveness denial was:

After a review of the documentation provided, the SBA concludes that the Borrower business which is part of a corporate group [that] has received more than $20,000,000 of PPP loans in the aggregate.

The applicant is part of a corporate group with Eric Persson as its common owner and the group exceeded the maximum $20,000,000 allowed via subject loan disbursement date after April 30, 2020.  It is confirmed that Eric Persson is the majority indirect owner of those multiple entities; therefore, it is confirmed that Eric Persson is the majority owner of all entities via direct or indirect ownership as attested to on the borrower's organizational chart and 2483's.  Based on the language in IFR #7, there is only one Corporate Group consisting of Eric Persson due to his majority ownership in each business.  As a result, this Corporate Group exceeds $20,000,000 in aggregate PPP loans.

## VI. Appeal

On September 28, 2023, Appellant filed the instant appeal arguing the Final SBA Loan Review Decision is clearly erroneous.  In the record on appeal (see Portal Docket, Utah Trailways Appeal and Exhibit B, both filed September 28, 2023, Portal Docket, Appellant Additional Filing

in Support, filed September 28, 2023, and Portal Docket, Reply, filed April 22, 2024.  Appellant argues that the Final SBA Loan Review Decision) Appellant argues that there is clear error in the Final SBA Loan Review Decision for the following reasons:

**A.  *Validity of the SCGL IFR provision in general and as applied to this case.***
1.  *The SBA's "single corporate group" rule exceeds the agency's statutory authority and is therefore unenforceable.*
2.  *The SBA's reliance on the rule with respect to the PPP Loan is misplaced because the SBA cannot apply that rule retroactively.*

**B.  *Meaning of the Single Corporate Group Limit (SCGL) Interim Final Rule (IFR)***
3.  *Is there ambiguity in the IFR*
4.  *The Administrative Record does not include any statement, position, guidance, or policy documents indicating why or how the SBA can interpret IFR 7 (such that the term "corporate parent" can mean an individual).*
5.  *The absence of a reasoned explanation for denial renders the SBA's decision erroneous.*
6.  *IFR 7 did not include an indication that it would apply to an individual as the corporate parent.*
7.  *A reading of IFR 7 that defines a Single Corporate Group as any single individual or multiple investors that invest more than once together and own more than 50% of entities ('commonly owned') is inappropriate.*

**C.  *Factual Inapplicability of IFR 7 to Appellant***
8.  *The "single corporate group limit" is inapplicable to the corporate group in which Appellant sits.*
9.  *The SBA Applied Its Affiliation Rules Rather Than a Review for a Corporate Group under a Common Parent*
10.  *Additional matter of which of the several PPP loans are ineligible for forgiveness.*

## VII.  Discussion and Analysis

**A.  *Validity of the SCGL IFR provision in general and as applied to this case.***

*1.    The SBA's "single corporate group" rule exceeds the agency's statutory authority and is therefore unenforceable.*

Appellant asserts (Portal Docket, Utah Trailways Appeal, filed September 28, 2023, p 8) that:

> The SBA exceeded its authority in promulgating the "single corporate group" maximum loan amount in IFR 7.  Again, "[a]dministrative agencies are creatures of statute.  They accordingly possess only the authority that Congress has provided."  Nat'l Fed'n of Indep. Bus., 142 S. Ct. at 665.  An agency's interpretation of a governing statute is not accorded deference when "Congress has directly spoken to the precise question at issue."  Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842 (1984).  The agency claims that it promulgated the "single corporate group" $20 million limit "[t]o preserve the limited resources available to the PPP program."  See 85 Fed. Reg. 26325 (May 4, 2020).  However, Congress had already determined the manner in which PPP resources were to be preserved.  See CARES Act § 1102(a)(E), 134 Stat. 289 (Mar. 27, 2020), codified at 15 U.S.C. § 636(a)(36)(E) (setting maximum loan amount under PPP).  The SBA exceeded its delegation of authority where it imposed a separate maximum loan

limit absent express delegation from Congress.  See Aid Ass'n for Lutherans v. U.S. Postal Service, 321 F.3d 1166, 1175 (D.C. Cir. 2003) (striking down regulation of reduced rates for mailings based on "types of insurance" where statute precisely delegated authority to regulate rates only as to "coverage provided" by an insurance policy).

Here, Congress directly addressed the question the SBA sought to answer in IFR 7: how should the agency preserve limited resources for PPP loans?  The statutory text answers the question: by applying the statutory maximum loan amount.  Congress did not state that the "maximum loan amount" under PPP could also be some other amount determined by the SBA through exercise of its rulemaking authority.  The SBA's creation of a discrete maximum loan amount, without statutory authorization, was *ultra vires*.

I initially note that the SBA is empowered in the U.S. Code, Title 15 – Commerce and Trade, Chapter 14A-Aid to Small Business; (a) to make rules and regulations the necessary to carry out the authority vested in the SBA by or pursuant to this chapter [14A], (b) to take actions that "are necessary or desirable in making, servicing, compromising, modifying, liquidating, or otherwise dealing with or realizing on loans made under the provisions of this chapter, and (c) to establish general policies to govern the granting and denial of applications for financial assistance by the Administration.  (15 U.S.C. §§ 633(d), 634(b)(6)-(7)).  Further, in Section 1114 of the CARES Act, Congress established in the SBA Administrator the duty and broad authority to issue regulations to carry out the Act, and to do so without regard to the notice requirements typically required when issuing regulations.

Pursuant to SBA's rule-making authority, SBA issued several Interim Final Rules ("IFRs").  The single corporate group limit was established to preserve limited PPP funds so as to promote the availability of loans to the largest possible number of borrowers.  Thus, to preserve the limited resources available to the PPP program, and in light of the previous lapse of PPP appropriations and the high demand for PPP loans, businesses that are part of a single corporate group could in no event receive more than $20,000,000 of PPP loans in the aggregate.  (IFR 7, 85 Fed. Reg. 26324, 26325(III)(1)).  SBA later repeated this rule after the Economic Aid Act was passed. (See Consolidated First Draw PPP IFR, 86 Fed. Reg. 3692, 3702, (III)(B)(4)(f) (footnote omitted)).

Appellant argues, nevertheless, that because the CARES Act sets the maximum loan amount, that the SBA could not impose the SCGL as a further limit on the most a borrower could obtain. (Reply, p 8.)  Indeed, the Act describes the calculation of the maximum loan amount in three places, once for the general cases, with a limit of $10,000,000 (15 USC §636 (a)(36)(E)(i)(I) and (ii)), once for businesses not having been in operation during February 15 to June 30, 2019, with a limit of $10,000,000 ((15 USC §636 (a)(36)(E)(i)(II) and (ii)), and once again for farmers and ranchers, with a limit of $2,000,000 for a farmer or rancher loan recipient with no employees (15 USC §636 (a)(36)(V)).

I note that pursuant to these statutory provisions, SBA issued guidance on "How to Calculate First Draw PPP Loan Amounts – By Business Type."  This guidance was first published on June 26, 2020, and updated and supplemented on January 17, 2021, and again on March 13, 2021. These publications included step-by-step directions on how to calculate the maximum loan amount from pertinent lines of tax returns and other information depending on the form of business of the borrower, whether a self-employed individual with or without employees, or a

farmer, or a partnership, or various types of corporations, or a non-profit entity, or a Limited Liability Company, and related information.

Appellant would have me consider whether the statutory provisions are so precise and exclusive as to preclude SBA from exercising its regulatory authority with an additional limitation (the SCGL) designed to effectuate the CARES Act's overall purposes, and then to invalidate the SCGL as being outside the SBA's regulatory authority.

I decline to make any ruling on such an argument. As noted in Section **I. CARES Act, PPP Loans and OHA Jurisdiction**, *Authority of an SBA OHA Judge,* above, the OHA judges are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. Thus, I have no authority to question or decide the validity of an SBA regulation or policy. Rather, my role is to determine whether the adopted regulations and policies have been appropriately applied to the facts of the case. I find that it was appropriate for SBA to apply the law, in this case the SCGL regulation from IFR7, as it presently exists. Correspondingly, in this regard, I find Appellant's argument that the SCGL was inappropriately promulgated does not show a clear error of law of fact in the making of the FLRD in this case.

2.      *The SBA's reliance on the rule with respect to the PPP Loan is misplaced because the SBA cannot apply that rule retroactively.*

Appellant argues that the SBA had no authority to retroactively change the conditions of Appellant's PPP Loan after Appellant submitted its loan application. Appellant explained in its appeal that Appellant submitted the application for a PPP Loan before May 4, 2020, the effective date of IFR7 and the SCGL, and therefore the SCGL ought not to apply to Appellant. Further, Appellant reports that SBA did not address this claim and has therefore waived this argument. (Reply, p 3.)

SBA responded in its Rebuttal (Portal Docket, Rebuttal, filed April 29, 2024) that the regulation in IFR 7 indicates on its face that it is "immediately effective with respect to any loan that **has not yet been fully disbursed** as of April 30, 2020." SBA points out, therefore, that since the loan in question funded on May 5, 2020, (AAR 4, 890) the limitation does indeed apply to this loan and the SCGL is not being retroactively or inappropriately applied to Appellant's loan. In effect SBA correctly argues that Appellant had notice (by publication on May 4, 2020) of the SCG Limitation and its applicability in advance of the disbursement of funds on May 5, 2020. I find this argument by SBA to be persuasive, and dispositive on this issue of applicability of IFR 7 to Appellant's loan and Appellant's application for forgiveness.

Additionally, I note that in making the retroactivity argument, Appellant fails to recognize the basic structure of the Paycheck Protection Program. First and foremost, the PPP is a loan program. It is perfectly conceivable that a PPP borrower would be grateful to receive the loan at 1% interest, and after a deferment period begin to repay the loan as scheduled. Seeking loan forgiveness is not required. In general, PPP loans were issued based on the lender's decision without an SBA assessment of the borrower's eligibility. Seeking forgiveness requires a separate application and decision-making process, which includes a review of the borrower's eligibility for the loan (for the first time by the SBA).

Since the earliest days of the Program, by a publication on April 6, 2020, SBA has been clear

about what rules were applicable at what times.  The issuance that day of the Frequently Asked Questions (FAQs) included:

> 17.  Question:  I filed or approved a loan application based on the version of the PPP Interim Final Rules published at the time of the application.  Do I need to take any action based on the updated guidance in these FAQs?
>
> Answer: No. Borrowers and lenders may rely on the laws, rules, and guidance available **at the time of the relevant application**.  However, borrowers whose previously submitted loan applications have not yet been processed may revise their applications based on clarifications reflected in these FAQs.
>
> See https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf.  (Emphasis added.)

Appellant here fails to recognize that the "relevant application" is not the loan application, but is instead the application for forgiveness, dated January 11, 2021.  This date is well after the issuance and effective date of IFR 7 and the SCGL on May 4, 2020.  Simply put, therefore, the SCGL was established prior to the forgiveness application (AAR 894) and the SCGL is therefore applicable to that application.  There is no retroactivity involved in applying the SCGL to Appellant's application for forgiveness.

Appellant cites three regulations 86 Fed. Reg. 8283, 8288 (Feb. 5, 2021); 85 Fed. Reg. 38304, 38306 (June 26, 2020), and 85 Fed. Reg. 33004, 33005 (June 1, 2020) in support of its position.  These cited regulations contain pertinent language that is the same or similar in each regulation.  The earliest of these regulations, 85 Fed. Reg. 33004, 33005 (June 1, 2020), describes the process to obtain loan forgiveness:

> To receive loan forgiveness, a borrower must complete and submit the Loan Forgiveness Application (SBA Form 3508 or lender equivalent) to its lender (or the lender servicing its loan).  As a general matter, the lender will review the application and make a decision regarding loan forgiveness.  The lender has 60 days from receipt of a complete application to issue a decision to SBA.  If the lender determines that the borrower is entitled to forgiveness of some or all of the amount applied for under the statute and applicable regulations, the lender must request payment from SBA at the time the lender issues its decision to SBA.  SBA will, subject to any SBA review of the loan or loan application, remit the appropriate forgiveness amount to the lender, plus any interest accrued through the date of payment, not later than 90 days after the lender issues its decision to SBA.  . . .  If SBA determines in the course of its review that the borrower **was ineligible for the PPP loan based on the provisions of the CARES Act, SBA rules or guidance available at the time of the borrower's loan application,** or the terms of the borrower's PPP loan application (for example, because the borrower lacked an adequate basis for the certifications that it made in its PPP loan application), the loan will not be eligible for loan forgiveness.  The lender is responsible for notifying the borrower of the forgiveness amount.  If only a portion of the loan is forgiven, or if the forgiveness request is denied, any remaining balance due on the loan must be repaid by the borrower on or before the two-year maturity of the loan.  If the amount remitted by SBA to the lender exceeds the remaining principal balance of the PPP loan (because the borrower made scheduled payments on the loan after the initial deferment period), the

lender must remit the excess amount, including accrued interest, to the borrower.

The general loan forgiveness process described above applies only to loan forgiveness applications that are not reviewed by SBA prior to the lender's decision on the forgiveness application. **In a separate interim final rule on SBA Loan Review Procedures and Related Borrower and Lender Responsibilities, SBA will describe its procedures for reviewing PPP loan applications and loan forgiveness applications.**

(86 Fed. Reg. 33004, 33005-06.) (Emphasis added.)

Appellant asserts that the emphasized language requires an assessment of the borrower's eligibility based on the rules operative at the loan application date. However, the Appellant disregards the reference to other regulations (that were apparently "to be" issued). Those referenced forthcoming regulations were published, indeed, on the same day, as the Federal Register document immediately following the above quoted selection. This second publication regarding "SBA Loan Review Procedures and Related Borrower and Lender Responsibilities" included:

Section 1106(b) of the CARES Act provides for **forgiveness of a PPP loan only if the borrower is an "eligible recipient."** The Administrator has determined that to be an eligible recipient that is entitled to forgiveness under section 1106(b), the borrower must be an "eligible recipient" under 15 U.S.C. 636(a)(36)(A)(iv) and rules and guidance available at the time of the borrower's loan application. This requirement promotes the public interest, aligns SBA's functions with other governmental policies, and appropriately carries out the CARES Act's PPP provisions, including by preventing evasion of the requirements for PPP loan eligibility and ensuring program integrity with respect to this emergency financial assistance program. It is also consistent with the CARES Act's nonrecourse provision, 15 U.S.C. 636(a)(36)(F)(v), which limits SBA's recourse against individual shareholders, members, or partners of a PPP borrower for nonpayment of a PPP loan only if the borrower is an eligible recipient of the loan. Accordingly, the PPP Loan Forgiveness Application (SBA Form 3508 or lender's equivalent form) notes that **SBA may direct a lender to disapprove a borrower's loan forgiveness application if SBA determines that the borrower does not qualify as an eligible recipient for the PPP loan.**

(86 Fed. Reg. 33010, 33012-13.) (Emphasis added.)

Note that 15 U.S.C. 636(a)(36)(A)(iv) declares that "(iv) the term "eligible recipient" means an individual or entity that **is** eligible to receive a covered loan." (Emphasis added.)

The emphasized selection from 85 Fed. Reg. 3305-06 clearly indicates that in the review for loan forgiveness, SBA must make an assessment of loan eligibility based on rules in effect at the time of the loan application. This is shown from the use of the words "was" and "rules or guidance available at the time of the borrower's loan application." This is, therefore, an assessment of initial loan eligibility, or eligibility *ab initio*.

However, the emphasized selections from 85 Fed. Reg. 33012-13 also clearly show that in the review for loan forgiveness, SBA must make an assessment of loan eligibility based on rules in

effect at the time of the forgiveness application.  This is shown from the use of the word "is" (not "was") and that the borrower "does" (not "did") not qualify as an eligible recipient.  Also, an "eligible recipient" is one who "is eligible" (not "was eligible").

A careful reading of these regulations and the tenses used discloses or infers a process whereby the lender makes a decision on the forgiveness application, based on the rules in effect at the time of that forgiveness application.  SBA may then review that lender decision, based on forgiveness application date rules, including the first assessment by SBA of the borrower's eligibility for the loan and for forgiveness, both based on the rules applicable at the "relevant" application's date, being the forgiveness application date.  Forgiveness may be denied by SBA for failure to meet the rules including eligibility for the loan based on rules at the time of the forgiveness application.  Additionally, in this first review by SBA, SBA conducts a retrospective review of the borrower's eligibility under rules in effect at the time of the loan application, and if SBA finds the borrower was initially ineligible, then loan forgiveness is also denied.

Remembering that the eligibility for a loan and its issuance is wholly separate from eligibility for and granting of forgiveness, note the consequences of a change in the rules after the loan application date.  If the borrower initially met the rules at the time of loan application but does not meet the loan eligibility rules operative at the forgiveness application date, then forgiveness is denied (thus, the loan remains intact, and the borrower must repay the loan).  Additionally, retrospectively, if it is found that the borrower did not meet the eligibility rules existing at the loan application date, then too the loan is denied forgiveness.  The consequence in this second case, when the borrower was ineligible *ab initio*, is not an immediate cancellation or calling for the immediate full repayment and closing of the loan.  Rather, the loan is continued despite initial ineligibility, and repayment according to the agreed terms is continued, although forgiveness is precluded.

I add that it is quite logical that the government might grant one benefit (the granting or guaranteeing of a loan on very favorable terms) under rules operative at the time of making the loan), and grant another wholly different though related benefit (forgiveness of that loan) based on different rules in effect at the time of the request for that possible second, forgiveness benefit.

In review then, Appellant argued that the SBA had no authority to retroactively change the conditions of Appellant's PPP loan after Appellant submitted its loan application.  However, SBA did not "retroactively change" the **loan conditions** by adopting the SCGL after Appellant's loan application and issuance.  Instead, the applicable loan conditions have remained constant since the application date.  Rather, Appellant's forgiveness application was submitted under a different set of rules than those that applied to the separate loan initiation rules.  This was consistent with the applicable law.  Appellant therefore in this regard has not shown a clear error by SBA in making the FLRD denying forgiveness.

**B.  Meaning of the Single Corporate Group Limit (SCGL) Interim Final Rule (IFR)**

*3.     Is there ambiguity in the IFR*

Appellant argues that there is no ambiguity in IFR 7 effective May 4, 2020, and therefore SBA is not free to construe a single corporate group as including common ownership of multiple businesses by one individual person.

- 16 -

The critical text regarding the single corporate group limit from IFR 7 reads:

> For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent.

Appellant argues (Additional Filing, p 6) that a regulation with a plain meaning must be interpreted within that plain meaning. See Kisor v. Wilkie, 139 S. Ct. 2400, 2419 (2019) ("If uncertainty does not exist, there is no plausible reason for deference. The regulation then just means what it means—and the court must give it effect, as the court would any law."). "Common parent" has an "ordinary, contemporary, common meaning" in the context of grouping businesses—a parent corporation—and that ordinary meaning governs interpretation of IFR 7. See Food Mktg. Inst. v. Argus Leader Media, 139 S. Ct. 2356, 2362 (2019) (holding that "[i]n statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning"). Appellant asserts that because IFR 7 is unambiguous that a "common parent" cannot be an "individual," the SBA is not entitled to deference in construing its own (post hoc) definition of "single corporate group."

Appellant clarifies (Additional Filing, p 1-2) that the individual in question here, Mr. Persson, is not a "common parent" under IFR 7 because he is an individual and can only be the parent of other persons, not corporations. In other words, according to Appellant, an individual cannot, as a matter of definition, be a "common parent" of corporations or other types of businesses. To be sure, individuals may own or invest in corporations, as Mr. Persson does here, but that status does not make Mr. Persson the parent to such entities. "Common parent" has an "ordinary, contemporary, common meaning" in the context of grouping businesses—a parent corporation—and that ordinary meaning governs interpretation of IFR 7. (Id.)

However, in asserting that a "common parent" in IFR 7 unambiguously means a parent corporation, Appellant disregards the context and overall setting of the IFR 7 as applying to the PPP. The PPP clearly permits individuals operating as sole proprietorships to receive PPP loans. It is well known that a single individual may operate multiple sole proprietorships. Each sole proprietorship business may be eligible for a PPP loan subject to relevant limitations and exclusions. Such multiple businesses would have a common parent, the sole proprietor, which is not a corporation.

I find no wording in IFR 7 that precludes finding the single, individual owner of those multiple sole proprietorships from being subject to the SCGL. Indeed, I find that such a construction of IFR 7 and limiting the amount available to such a borrower is in keeping with its stated purpose, to preserve the limited resources available to the PPP and to promote the availability of loans to the largest possible number of borrowers.

Similarly, a partnership is eligible to receive a PPP loan. I note that a partnership might have subordinate businesses in the form of LLCs as a business structure to limit liability. It appears that SBA may indeed have intended to limit the overall loan amount to such a group of businesses, in addition to affiliation rules that might be applicable (or waived), even though not involving one corporation as the "parent" of another corporation.

Thus, I find that the allegedly unambiguous "ordinary, contemporary, common meaning" of the words "common parent" as meaning a "parent corporation" in the context of grouping businesses is simply not accurate when considered in the context of the Paycheck Protection Program.

- 17 -

Thus, I find that the words "common parent" do not necessarily mean a "parent corporation." Rather, I find the IFR 7 regulation's use of the words "single corporate group" to be an unfortunate and inartful choice of words, or "name" for this limitation, since there may be no corporations involved in the identified collection of businesses. However, I find the wording "common parent" to make sense when considered in the context of the PPP and would include a corporation, an LLC, a partnership, and an individual owner (or part owner) of multiple businesses.

I note that if the regulators had intended the limitation to apply to corporations only, as is suggested in Appellant's argument, then it would have been appropriate to use the words "corporate parent" in the quoted sentence from IFR 7. However, the broader "common parent" was used, and one therefore concludes from that construction that the broader meaning was intended, and that the limitation does not apply to just "corporate parents."

Thus, using the language of the CARES Act which addresses "business concerns" (see *e.g.*, 15 USC 636(a)(36)(D)), the quoted sentence from IFR 7 reasonably can be understood to mean:

> For purposes of this limit, businesses are part of a single <u>business concern</u> group if they are majority owned, directly or indirectly, by a common <u>owner</u>.

In summary on the point, therefore, I find that the wording of IFR 7 when considered in the context of the Paycheck Protection Program is sufficiently imprecise as to allow me to consider and interpret its meaning. Therefore, I find that the meaning of the application of the SCGL in IFR 7 is not intended to be limited to parent "corporations" but that other entities and business formats, including individuals, may be a "common parent" subject to the limitation.

Appellant put forth several arguments that an individual person cannot be a "corporate parent" of a corporate group, and that therefore IFR 7 does not apply when (as in this case) an individual is a majority owner of the multiple business concerns at issue.

Again, the critical language from IFR 7 is:

> For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent.

In light of what has been said, I have found, above, that the limitation is sufficiently broad as to apply to a single individual person who is a majority owner of multiple business concerns.

Nevertheless, I will address Appellant's arguments that such a finding is in error.

*4.    The Administrative Record does not include any statement, position, guidance, or policy documents indicating why or how the SBA can interpret IFR 7 (such that the term "corporate parent" can mean an individual).*

"The administrative record shall include non-privileged, relevant documents that SBA considered in making its final loan review decision or that were before SBA at the time of the final loan review decision. The administrative record need not, however, contain all documents pertaining to the appellant." 13 CFR §134.1207(b).

The cited rule is understood, however, to operate within the context of the PPP.  Therefore, the CARES Act, the pertinent sections of the Code of Federal Regulations, and any other applicable regulations, Interim Final Rules and notices published by SBA (or the U.S. Treasury) which are generally applicable need not be included in the Administrative Record but are nevertheless applicable to each PPP appeal.  Also, as noted above, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules.  However, the ALJ's function is to determine whether the adopted regulations and policies have been appropriately applied to the facts of the case.  Necessarily that process may involve an assessment of the meaning and interpretation of the regulations.  No specific authority is needed to be included in the Administrative Record because the very nature of an appeal is to consider the rules and their meaning as applied to the facts of the case at hand.

I note that Appellant argued (Additional Filing, p 6) for the applicability of the rulings in Kisor v. Wilkie, 139 S. Ct. 2400, 2419 (2019).  Appellant indicated that the case found that a regulation with a plain meaning must be interpreted within that plain meaning.  However, the necessary precursor to such a conclusion is that the Judge or tribunal must assess the meaning of the pertinent rule to determine whether there is (or is not) a plain meaning.  Thus, the interpretation of applicable rules is within the purview of the decision-maker in all cases.

5.      *The absence of a reasoned explanation for denial renders the SBA's decision erroneous.*

The Final SBA Loan Review Decision in this case states that:

> After a review of the documentation provided, the SBA concludes that the Borrower business which is part of a corporate group has received more than $20,000,000 of PPP loans in the aggregate.  The applicant is part of a corporate group with Eric Persson as its common owner and the group exceeded the maximum $20,000,000 allowed via subject loan disbursement date after April 30, 2020.  It is confirmed that Eric Persson is the majority indirect owner of those multiple entities; therefore, it is confirmed that Eric Persson is the majority owner of all entities via direct or indirect ownership as attested to on the borrower's organizational chart and 2483's.  Based on the language in IFR #7, there is only one Corporate Group consisting of Eric Persson due to his majority ownership in each business.  As a result, this Corporate Group exceeds $20,000,000 in aggregate PPP loans.

I find that this explanation is an appropriate explanation of the basis for denial of forgiveness and clearly shows that the SBA's decision was not "arbitrary and capricious."  The denial decision sets forth the reliance on IFR 7 and the single corporate group limitation, that there was a common group of businesses with a majority owner, giving the name of that owner as Eric Persson, referred to an organizational chart provided by Appellant, and that the group's loans exceed the limitation.

Moreover, in describing the basis for the denial decision, the decision necessarily indicates that SBA reviewed the submitted materials, including the organizational chart and information regarding the ownership interests of Mr. Persson.  Thus, the FLRD indicated that there was an assessment and evaluation by SBA in arriving at the FLRD and that the denial decision was neither arbitrary nor capricious.

Further, Appellant was sufficiently informed by this explanation so at to be able to prepare a

cogent and thorough objection to the denial of forgiveness as presented in Appellant's appeal petition (Portal Docket, Utah Trailways Appeal, filed September 28, 2023).

Thus, I find that Appellant's claim that absence of a reasoned explanation for denial renders the SBA's decision erroneous is without merit.

6.      *IFR 7 did not include an indication that it would apply to an individual as the corporate parent.*

Appellant argues that the Administrative Record contains, and by inference SBA relied upon, a reference to 31 C.F.R. § 148.2(c), a Treasury Department definition section on recordkeeping requirements for the Federal Deposit Insurance Corporation, which has no connection to PPP loan forgiveness under the CARES Act, and which the SBA did not cite, reference, or otherwise allude to in IFR 7.  See AAR 5209.  The cited record indicates that Treasury defines a "corporate group" as an "entity and all affiliates of that entity."

Firstly, I note that the cited worksheet (AAR 5209) is an undated draft document and that the citation to the Treasury Department regulation therein is not included in the Final SBA Loan Review Decision.  Further, the cited worksheet indicates that, in addition to the Treasury regulation, IFR 7 provides the definition of a single corporate group as has been indicated above, with a common parent, which is Eric Persson.  The document then reports, "As indicated by the majority ownership of Eric Persson, all members of this affiliate family are part of a single corporate group being affiliates of each other under the common control of Mr. Persson."  (*Id.*) This statement shows no reliance on the Treasury department regulation.

Therefore, it does not clearly appear that the Treasury regulation was relied upon in arriving at the FLRD.  Appellant's burden of proof to show clear error of fact or law in the FLRD is not met in this regard.

7.      *A reading of IFR 7 that defines a Single Corporate Group as any single individual or multiple investors that invest more than once together and own more than 50% of entities ('commonly owned') is inappropriate.*

Appellant asserts that, in separate communications via two PPP lenders to other entities within the purported "corporate group" owned by Mr. Persson, the SBA is now attempting to enforce a different definition of "common parent" for purposes of defining a "single corporate group." See Exhibit A (Email from Lexicon Bank) and Exhibit B (Email from U.S. Bank), both filed April 5, 2024.  Thus, apparently, SBA now defines "a Corporate Group as any single individual or multiple investors that invest more than once together and own more than 50% of entities ('commonly owned')." Appellant asserts that this new definition is conspicuously divorced from the text of IFR 7, and that SBA's arbitrary redefinition is a clear overstep of its regulatory boundaries and a disregard for its own rules.  (Portal Docket, Appellant Additional Filing in Support, filed April 5, 2024, p 7.)

What I have said above shows my finding that in the context of the PPP, the critical provision of IFR 7 is sufficiently imprecise and broad as to allow me to consider its meaning.  I thereupon concluded that the nomenclature as a "corporate group" limitation was too narrow, since not all PPP borrowers are corporations or are in groups of corporations.  I found that a single individual could indeed be the majority of multiple business concerns with PPP loans and would therefore

be considered a parent owner of those business concerns and the single group limitation intended by IFR 7 would properly apply to the group of business concerns.

I also found, above, that SBA was within its regulatory power to issue regulations regarding the PPP, including the limitation on single groups of business concerns found in IFR 7.

Appellant's claim that such a construction as I suggested, above, and the similar construction indicated by SBA in the emails cited above, is "conspicuously divorced from the text of IFR 7" misses the point.  Appellant's construction of IFR 7 would construe the limitation as applying only to corporations.  Appellant specifically noted that "the term 'common parent' also does not include LLCs, which are distinct entities from corporations as a matter of law." (Portal Docket, Utah Trailways Appeal, filed September 28, 2024, p 4, fn. 1.)   This narrow construction (limiting the SCGL to corporations only) is clearly not the intent of IFR 7 as broader language was used in the IFR 7 text and is illogical when considered in the context of the PPP.  Such a narrow reading of the rule as applying only to corporations would permit unlimited lending to partnerships, LLCs, and sole proprietorships, when operating with a common majority owner, and as long as other rules, including affiliation rules, were satisfied.  (See 13 CFR §121.103 and 301.)  Such a construction is contrary to the stated purpose of IFR 7 to "to promote the availability of loans to the largest possible number of borrowers."

Thus, I find appropriate a reading of IFR 7 that defines a Single Corporate Group as the collection of business concerns in which any single individual or multiple investors invest more than once together and own more than 50% of each of those multiple business concerns.  Correspondingly, in this regard, I find no showing by Appellant meeting the burden of proof that SBA made a clear error of law or fact in making the Final SBA Loan Review Decision in this case.

## C.  Factual Inapplicability of the IFRs to Appellant

*8.      The "single corporate group limit" is inapplicable to the corporate group in which Appellant sits.*

In Appellant's Additional Filing in Support of Appeal, filed April 5, 2024, Appellant asserts that there are six separate "corporate groups" in which most of the consolidated Appellants are grouped, plus some of the consolidated Appellants do not fit in any of the six groups.  (See also AAR 6043-6044.)  I note that Appellant does not identify the basis for separation of the entities into the six groups, or as not in a group.  However, from the organizational chart (*Id.*) it appears that there are six groups defined by which entities (corporations and LLCs) are subordinates of other entities.  The organizational chart shows that LLCs are subordinates of other LLCs and of corporations, and corporations are subordinates of other corporations and of LLCs.

However, Appellant (Utah Trailways) recognizes that Mr. Persson as an individual is a direct or indirect owner of a majority interest in each of the consolidated appellants (AAR 6043 -6044), but only certain of the consolidated appellants are under Mr. Persson's direct ownership, as reflected in the master organizational chart.  (Additional Filing in Support of Appeal, p 2.)  From the ownership interests shown in the organizational chart (AAR 6043 -6044) and in the Eric Presson Affiliate Family spreadsheet (filed March 11, 2024) I find that Mr. Persson does have a majority interest of not less than 57%, directly or indirectly, in each of the consolidated Appellants.

Therefore, for Mr. Perssons business purposes and convenience, the separate entities may be organized into six separate ownership, reporting and logistical structures; however, such an organizational structure does not preclude the grouping of all the entities into one "single corporate group" for the purposes of assessment in relation to the group limitation in IFR 7.

IFR7 states that:

> . . . businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate. For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent. . . . Businesses are subject to this limitation even if the businesses are eligible for the waiver-of-affiliation provision under the CARES Act or are otherwise not considered to be affiliates under SBA's affiliation rules.

I have found, above, that an individual (in this case Mr. Eric Persson) can be a common parent of multiple business concerns for the purposes of assessment in relation to the single corporate group limitation. Since each of the consolidated Appellants is majority owned by Mr. Persson, directly or indirectly, as shown in the record, each of the consolidated Appellants is considered a part of a "single corporate group" for application of the single corporate group limitation. Correspondingly, that limitation applies to each of the consolidated Appellants. Therefore, to the extent that the PPP loan to each of the consolidated Appellants does or would exceed the $20,000,000.00 limitation, that loan would be a loan for which the borrower was ineligible (per the SCGL), and the loan would not be forgivable (per IFR 7).

Relatedly, in this regard, I find no showing by Appellant meeting the burden of proof that SBA made a clear error of law or fact in making the Final SBA Loan Review Decision in this case.

*9.      The SBA Applied Its Affiliation Rules Rather Than a Review for a Corporate Group under a Common Parent*

Appellant asserts that the:

> Administrative Record makes clear that the SBA's limited internal analyses merged the concepts of affiliation and common parent under a corporate group to deny loan forgiveness. Plainly, the SBA applied its affiliation rules to determine which of the consolidated appellants encompassed a "corporate group." In review of IFR #7 it is noted in clause 1. with the heading "Can a single corporate group receive unlimited PPP loans?" there is a reference to SBA's affiliation rules indicating the recognition ***that affiliation equates to a corporate group***. See [AAR at 5209] (emphasis as quoted).

I note that the record reflects that affiliation rules were considered regarding the business concerns majority owned by Mr. Persson. Apparently, some businesses were granted a waiver of the affiliation rules because the business activity of those businesses was identified with an NAICS code beginning with 72. The other businesses not warranting waiver were denied forgiveness based on only the Single Corporate Group Limitation. However, it appears that SBA concluded that the unwaived businesses were "affiliates" of each other based on common, majority ownership by Mr. Persson. Although SBA found these businesses comprised 3,743 employees and thus may have exceeded the size standards, as shown in the Final SBA Loan

Review Decision, SBA did not base the forgiveness denials on the affiliation rules.  See AAR 8.

Further, IFR 7 states that:

> Businesses are subject to this [single corporate group] limitation even if the businesses are eligible for the waiver-of-affiliation provision under the CARES Act or are otherwise not considered to be affiliates under SBA's affiliation rules.

Thus, the single corporate group limitation applies to the consolidated Appellants whether or not those entities are or are not affiliates, and whether or not the affiliation limitations for each entity was or could be waived.  The single corporate group limitation is a wholly independent limiting rule.

The FLRD in the current appeal is clear that the denial of forgiveness was based solely on the single corporate group limitation, and the affiliation rules are not a basis for the denials.  This is especially clear where a prior appeal was based on affiliation as indicated in the FLRD dated January 18, 2022, which FLRD was withdrawn by SBA and the appeal was dismissed.  (See Portal Duplicate/Refiled Appeals, filed February 17, 2022.)

Thus, I find Appellant's assertion, that SBA applied its affiliation rules rather than only the single corporate group rules, is without merit, and that Appellant has not, in this regard, met its burden of proof of an error of law or fact in the making of the Final SBA Loan Review Decision.

10.     *Additional matter of which of the several PPP loans are ineligible for forgiveness.*

The record shows that there were at least 38 PPP loans made to entities majority owned by Mr. Persson.  I have found that those loans that caused the $20,000,000.00 single corporate group limitation to be exceeded are ineligible for loan forgiveness.  The question arises, then, as to which of the loans may be forgiven and which may not.

One could argue that those first in time (whether the date of loan application, date of loan issuance, or date of forgiveness application) should be granted until the limit is reached.  One could also argue that of all the loans, the smallest first should be granted so as to promote loans and forgiveness to the greatest number of borrowers, consistent with the stated purposes of the single corporate group limitation in IFR 7.

However, since the forgiveness application is optional and the time between loan issuance and submission of a forgiveness application is variable, it is not realistically possible to forgive loans on a smallest first basis.

SBA has indicated (AAR 5209) that the order of forgiveness for loans in the group are taken chronologically to determine which were disbursed first.  Thus, those loans first in time based on the date of loan issuance are granted forgiveness, if otherwise eligible, until the single corporate group limit is reached.

I find that such a procedure is rational and not arbitrary or capricious.  It allows for an orderly and methodical assessment of loans in relation to the limitation.

In this case the record (AAR 5210) shows that there are 40 loans in the single corporate group.

Docket No. PPP – 1780087404-CONS

Of those, 10 loans have been granted forgiveness, for a total of $19,710,548.00 forgiveness.  The remaining 30 loans, for $32,963,685.00 combined, exceed the limitation in IFR 7 and are precluded from forgiveness by the single corporate group limitation as issued in IFR 7.

## VIII.  Conclusion

This case boils down to whether the single corporate group limitation in Interim Final Rule 7 is operative regarding Appellant, and a further determination of whether a single corporate group may have a "corporate parent" that is an individual.  I conclude that the provisions of IFR 7 are binding upon Appellant, Appellant's PPP loan, and Appellant's application for forgiveness of that loan.  I further find that the single corporate group limitation promulgated in IFR 7 includes the situation wherein a group of business concerns are majority owned by a single individual, and that therefore the combined forgiveness allowed to the group of businesses cannot exceed the $20,000,000 limitation.

Utah Trailways Charter Bus Company LLC, Appellant herein, has not shown that the SBA committed a clear error of fact or law in making the Final SBA Loan Review Decision. Therefore, the APPEAL IS DENIED, and the decision of the Final SBA Loan Review Decision is affirmed.

Additionally, this decision applies to each of the consolidated Appellants identified in the Introductory Note near the beginning of this Decision, and each of their respective appeals is hereby denied on the same Agreed Administrative Record, factual findings, reasoning and conclusions of law as indicated herein.

This appeal is decided under the Small Business Act of 1958, 15 U.S.C. §631 et seq., and 13 CFR Part 134.  This is an initial decision by the SBA.  However, unless a request for reconsideration is filed pursuant to 13 C.F.R. § 134.1211(c) on the OHA Case Portal at https://appeals.sba.gov, this decision shall become the final decision of SBA 30 calendar days after its service.  See 13 C.F.R. § 134.1211(b).  Per regulations, including 13 CFR §134.1211(c)(1), a request for reconsideration may be made only within 10 calendar days after service of a Judge's decision.  It is the borrower's responsibility to review the rules and procedures.

John Trunick
John Trunick
    Sr. Administrative Law Judge