# EXHIBIT 6

As of April 6, 2020

**PAYCHECK PROTECTION PROGRAM LOANS**
Frequently Asked Questions (FAQs)

The Small Business Administration (SBA), in consultation with the Department of the Treasury, intends to provide timely additional guidance to address borrower and lender questions concerning the implementation of the Paycheck Protection Program (PPP), established by section 1102 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act or the Act). This document will be updated on a regular basis.

Borrowers and lenders may rely on the guidance provided in this document as SBA's interpretation of the CARES Act and of the Paycheck Protection Program Interim Final Rule ("PPP Interim Final Rule") (link). The U.S. government will not challenge lender PPP actions that conform to this guidance,[1] and to the PPP Interim Final Rule and any subsequent rulemaking in effect at the time.

1. **Question:** Paragraph 3.b.iii of the Paycheck Protection Program Interim Final Rule states that lenders must "[c]onfirm the dollar amount of average monthly payroll costs for the preceding calendar year by reviewing the payroll documentation submitted with the borrower's application." Does that require that the lender replicate every borrower's calculations?

   **Answer:** No. Providing an accurate calculation of payroll costs is the responsibility of the borrower, and the borrower must attest to the accuracy of those calculations. Lenders are expected to perform a good faith review, in a reasonable time, of the borrower's calculations and supporting documents concerning average monthly payroll cost. The level of diligence by a lender should be informed by the quality of supporting documents supplied by the borrower. Minimal review of calculations based on a payroll report by a recognized third-party payroll processor, for example, would be reasonable.

   If lenders identify errors in the borrower's calculation or material lack of substantiation in the borrower's supporting documents, the lender should work with the borrower to remedy the error.

2. **Question:** Are small business concerns (as defined in section 3 of the Small Business Act, 15 U.S.C. 632) required to have 500 or fewer employees to be eligible borrowers in the PPP?

   **Answer:** No. Small business concerns can be eligible borrowers even if they have more than 500 employees, as long as they satisfy the existing statutory and regulatory definition of a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. 632. A business can qualify if it meets the SBA employee-based or revenue-

---

[1] This document does not carry the force and effect of law independent of the statute and regulations on which it is based.

As of April 6, 2020

based size standard corresponding to its primary industry.  Go to www.sba.gov/size for the industry size standards.

Additionally, a business can qualify for the Paycheck Protection Program as a small business concern if it met both tests in SBA's "alternative size standard" as of March 27, 2020: (1) maximum tangible net worth of the business is not more than $15 million; and (2) the average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

A business that qualifies as a small business concern under section 3 of the Small Business Act, 15 U.S.C. 632, may truthfully attest to its eligibility for PPP loans on the Borrower Application Form, unless otherwise ineligible.

3.  **Question:** Does my business have to qualify as a small business concern (as defined in section 3 of the Small Business Act, 15 U.S.C. 632) in order to participate in the PPP?

    **Answer:** No.  In addition to small business concerns, a business is eligible for a PPP loan if the business has 500 or fewer employees whose principal place of residence is in the United States, or the business meets the SBA employee-based size standards for the industry in which it operates (if applicable).  Similarly, PPP loans are also available for qualifying tax-exempt nonprofit organizations described in section 501(c)(3) of the Internal Revenue Code (IRC), tax-exempt veterans organization described in section 501(c)(19) of the IRC, and Tribal business concerns described in section 31(b)(2)(C) of the Small Business Act that have 500 or fewer employees whose principal place of residence is in the United States, or meet the SBA employee-based size standards for the industry in which they operate.

4.  **Question:**  Are lenders required to make an independent determination regarding applicability of affiliation rules under 13 C.F.R. 121.301(f) to borrowers?

    **Answer:**  No.  It is the responsibility of the borrower to determine which entities (if any) are its affiliates and determine the employee headcount of the borrower and its affiliates. Lenders are permitted to rely on borrowers' certifications.

5.  **Question:**  Are borrowers required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)?

    **Answer:**  Yes.  Borrowers must apply the affiliation rules set forth in SBA's Interim Final Rule on Affiliation.  A borrower must certify on the Borrower Application Form that the borrower is eligible to receive a PPP loan, and that certification means that the borrower is a small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), meets the applicable SBA employee-based or revenue-based size standard, or meets the tests in SBA's alternative size standard, after applying the affiliation rules, if applicable.  SBA's existing affiliation exclusions apply to the PPP, including, for example the exclusions under 13 CFR 121.103(b)(2).

As of April 6, 2020

6. **Question:** The affiliation rule based on ownership (13 C.F.R. 121.301(f)(1)) states that SBA will deem a minority shareholder in a business to control the business if the shareholder has the right to prevent a quorum or otherwise block action by the board of directors or shareholders. If a minority shareholder irrevocably gives up those rights, is it still considered to be an affiliate of the business?

   **Answer:** No. If a minority shareholder in a business irrevocably waives or relinquishes any existing rights specified in 13 C.F.R. 121.301(f)(1), the minority shareholder would no longer be an affiliate of the business (assuming no other relationship that triggers the affiliation rules).

7. **Question:** The CARES Act excludes from the definition of payroll costs any employee compensation in excess of an annual salary of $100,000. Does that exclusion apply to all employee benefits of monetary value?

   **Answer:** No. The exclusion of compensation in excess of $100,000 annually applies only to cash compensation, not to non-cash benefits, including:
   - employer contributions to defined-benefit or defined-contribution retirement plans;
   - payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums; and
   - payment of state and local taxes assessed on compensation of employees.

8. **Question:** Do PPP loans cover paid sick leave?

   **Answer:** Yes. PPP loans covers payroll costs, including costs for employee vacation, parental, family, medical, and sick leave. However, the CARES Act excludes qualified sick and family leave wages for which a credit is allowed under sections 7001 and 7003 of the Families First Coronavirus Response Act (Public Law 116–127). Learn more about the Paid Sick Leave Refundable Credit here.

9. **Question:** My small business is a seasonal business whose activity increases from April to June. Considering activity from that period would be a more accurate reflection of my business's operations. However, my small business was not fully ramped up on February 15, 2020. Am I still eligible?

   **Answer:** In evaluating a borrower's eligibility, a lender may consider whether a seasonal borrower was in operation on February 15, 2020 or for an 8-week period between February 15, 2019 and June 30, 2019.

10. **Question:** What if an eligible borrower contracts with a third-party payer such as a payroll provider or a Professional Employer Organization (PEO) to process payroll and report payroll taxes?

   **Answer:** SBA recognizes that eligible borrowers that use PEOs or similar payroll providers are required under some state registration laws to report wage and other data on

As of April 6, 2020

the Employer Identification Number (EIN) of the PEO or other payroll provider.  In these cases, payroll documentation provided by the payroll provider that indicates the amount of wages and payroll taxes reported to the IRS by the payroll provider for the borrower's employees will be considered acceptable PPP loan payroll documentation.  Relevant information from a Schedule R (Form 941), Allocation Schedule for Aggregate Form 941 Filers, attached to the PEO's or other payroll provider's Form 941, Employer's Quarterly Federal Tax Return, should be used if it is available; otherwise, the eligible borrower should obtain a statement from the payroll provider documenting the amount of wages and payroll taxes.  In addition, employees of the eligible borrower will not be considered employees of the eligible borrower's payroll provider or PEO.

11. **Question:**  May lenders accept signatures from a single individual who is authorized to sign on behalf of the borrower?

    **Answer:**  Yes.  However, the borrower should bear in mind that, as the Borrower Application Form indicates, only an authorized representative of the business seeking a loan may sign on behalf of the business.  An individual's signature as an "Authorized Representative of Applicant" is a representation to the lender and to the U.S. government that the signer is authorized to make the certifications, including with respect to the applicant and each owner of 20% or more of the applicant's equity, contained in the Borrower Application Form.  Lenders may rely on that representation and accept a single individual's signature on that basis.

12. **Question:**  I need to request a loan to support my small business operations in light of current economic uncertainty.  However, I pleaded guilty to a felony crime a very long time ago.  Am I still eligible for the PPP?

    **Answer:**  Yes. Businesses are only ineligible if an owner of 20 percent or more of the equity of the applicant is presently incarcerated, on probation, on parole; subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction; or, within the last five years, for any felony, has been convicted; pleaded guilty; pleaded nolo contendere; been placed on pretrial diversion; or been placed on any form of parole or probation (including probation before judgment).

13. **Question:**  Are lenders permitted to use their own online portals and an electronic form that they create to collect the same information and certifications as in the Borrower Application Form, in order to complete implementation of their online portals?

    **Answer:**  Yes.  Lenders may use their own online systems and a form they establish that asks for the same information (using the same language) as the Borrower Application Form.  Lenders are still required to send the data to SBA using SBA's interface.

14. **Question:**  What time period should borrowers use to determine their number of employees and payroll costs to calculate their maximum loan amounts?

As of April 6, 2020

**Answer:**  In general, borrowers can calculate their aggregate payroll costs using data either from the previous 12 months or from calendar year 2019.  For seasonal businesses, the applicant may use average monthly payroll for the period between February 15, 2019, or March 1, 2019, and June 30, 2019.  An applicant that was not in business from February 15, 2019 to June 30, 2019 may use the average monthly payroll costs for the period January 1, 2020 through February 29, 2020.

Borrowers may use their average employment over the same time periods to determine their number of employees, for the purposes of applying an employee-based size standard. Alternatively, borrowers may elect to use SBA's usual calculation: the average number of employees per pay period in the 12 completed calendar months prior to the date of the loan application (or the average number of employees for each of the pay periods that the business has been operational, if it has not been operational for 12 months).

15. **Question:**  Should payments that an eligible borrower made to an independent contractor or sole proprietor be included in calculations of the eligible borrower's payroll costs?

**Answer:**  No.  Any amounts that an eligible borrower has paid to an independent contractor or sole proprietor should be excluded from the eligible business's payroll costs.  However, an independent contractor or sole proprietor will itself be eligible for a loan under the PPP, if it satisfies the applicable requirements.

16. **Question:**  How should a borrower account for federal taxes when determining its payroll costs for purposes of the maximum loan amount, allowable uses of a PPP loan, and the amount of a loan that may be forgiven?

**Answer:**  Under the Act, payroll costs are calculated on a gross basis without regard to (i.e., not including subtractions or additions based on) federal taxes imposed or withheld, such as the employee's and employer's share of Federal Insurance Contributions Act (FICA) and income taxes required to be withheld from employees.  As a result, payroll costs are not reduced by taxes imposed on an employee and required to be withheld by the employer, but payroll costs do not include the employer's share of payroll tax.  For example, an employee who earned $4,000 per month in gross wages, from which $500 in federal taxes was withheld, would count as $4,000 in payroll costs.  The employee would receive $3,500, and $500 would be paid to the federal government.  However, the employer-side federal payroll taxes imposed on the $4,000 in wages are excluded from payroll costs under the statute.[2]

---

[2] The definition of "payroll costs" in the CARES Act, 15 U.S.C. 636(a)(36)(A)(viii), excludes "taxes imposed or withheld under chapters 21, 22, or 24 of the Internal Revenue Code of 1986 during the covered period," defined as February 15, 2020, to June 30, 2020.  As described above, the SBA interprets this statutory exclusion to mean that payroll costs are calculated on a gross basis, without subtracting federal taxes that are imposed on the employee or withheld from employee wages.  Unlike employer-side payroll taxes, such employee-side taxes are ordinarily expressed as a reduction in employee take-home pay; their exclusion from the definition of payroll costs means payroll costs should not be reduced based on taxes imposed on the employee or withheld from employee wages. This interpretation is consistent with the text of the statute and advances the legislative purpose of ensuring workers

As of April 6, 2020

17. **Question:** I filed or approved a loan application based on the version of the PPP Interim Final Rule published on April 2, 2020. Do I need to take any action based on the updated guidance in these FAQs?

   **Answer:** No. Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application. However, borrowers whose previously submitted loan applications have not yet been processed may revise their applications based on clarifications reflected in these FAQs.

18. **Question:** Are PPP loans for existing customers considered new accounts for FinCEN Rule CDD purposes? Are lenders required to collect, certify, or verify beneficial ownership information in accordance with the rule requirements for existing customers?

   **Answer:** If the PPP loan is being made to an existing customer and the necessary information was previously verified, you do not need to re-verify the information.

   Furthermore, if federally insured depository institutions and federally insured credit unions eligible to participate in the PPP program have not yet collected beneficial ownership information on existing customers, such institutions do not need to collect and verify beneficial ownership information for those customers applying for new PPP loans, unless otherwise indicated by the lender's risk-based approach to BSA compliance.

---

remain paid and employed. Further, because the reference period for determining a borrower's maximum loan amount will largely or entirely precede the period from February 15, 2020, to June 30, 2020, and the period during which borrowers will be subject to the restrictions on allowable uses of the loans may extend beyond that period, for purposes of the determination of allowable uses of loans and the amount of loan forgiveness, this statutory exclusion will apply with respect to such taxes imposed or withheld at any time, not only during such period.